UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
GARRETH MURRELL, *et al.*,

                Plaintiffs,

          -against-

PRO CUSTOM SOLAR LLC, *et al.*,

                Defendants.
---------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
19 CV 2656 (KAM) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

      On May 6, 2019, plaintiffs Garreth Murrell, Tevin Brown, Kenneth Sapp, Raoul Gerdes,

Chevon Riley, Shaddon Beswick (the "New York plaintiffs"), and Joseph Ashby (collectively,

"plaintiffs") commenced this action on behalf of themselves and all similarly situated employees

against defendants Pro Custom Solar LLC, d/b/a Momentum Solar ("Momentum"), Jessica

Adams, Rajan Silberman, and Adam Murawski, in their individual and professional capacities

(collectively with Momentum, "defendants"), alleging discrimination on the basis of race and

retaliation, in violation of 42 U.S.C. § 1981, the New York State Human Rights Law, New York

Executive Law § 290 *et seq*. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C.

Administrative Code § 8-107 *et seq*. ("NYCHRL").  The New York plaintiffs also brought

claims against defendants alleging wage and hour violations under the Fair Labor Standards Act

("FLSA"), and the New York Labor Law ("NYLL") on behalf of themselves and a putative

collective class of similarly situated New York-based Field Installation Department employees.

Plaintiff Ashby alleges violations of the New Jersey Wage and Hour Law ("NJWHL") on behalf

of himself and all other similarly situated employees.

      On September 18, 2020, the Court granted plaintiffs' motion to file an amended

complaint.  (ECF No. 63).  The Court also granted their motion for conditional class

certification.  (Id.).  On July 8, 2021, the Court granted plaintiffs' motion to file a revised Second Amended Complaint.  (ECF No. 207).  In the revised Second Amended Complaint, plaintiffs added discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII").  (ECF No. 68-1).

Currently before the Court is plaintiffs' August 13, 2021 motion for leave to amend the Second Amended Complaint and file a Third Amended Complaint ("Proposed Complaint") adding eleven (11) new named plaintiffs.  For the reasons stated below, this Court respectfully recommends that plaintiffs' motion be granted in part and denied in part as set forth below.

<u>FACTUAL BACKGROUND</u>

Defendant Momentum is a New Jersey limited liability company that conducts business in New Jersey and New York.  (Compl.[1] ¶ 47).  Momentum's principal place of business for its New York operations is located at 45 Fairchild Avenue, Suite B, Plainview, New York 11803, and its principal place of operations in New Jersey is located at 325 High Street, Metuchen, New Jersey 08840. (Id.)  According to the Proposed Complaint, Momentum is "one of the nation's most successful and fastest growing clean energy companies, . . . aspires to become a publicly traded company[,]" and was "recently ranked as the '#2' energy company in the nation." (Id. ¶¶ 1-2).

The New York Plaintiffs and the eleven newly proposed plaintiffs, Maurice Perry, Antwan Senior, Luis Taylor, Vaughn Burke, Andrae Brown, Antonio Zapata, Kevin Fowler, Pablo Dominguez, Morens Badiau, Giovanni Benjamin, and Christopher Mercure ("Proposed Plaintiffs"), allege that they are Black males, residents of the State of New York, and were defendant Momentum's "employees" "at all relevant times."  (Id. ¶¶ 25, 28-45).  The Proposed

---

[1] Citations to "Compl." refer to plaintiffs' proposed Third Amended Class Action Complaint, filed with the Court on August 13, 2021, and attached as Exhibit A to Tanvir H. Rahman's Declaration ("Rahman Decl."), ECF No. 218.

Plaintiffs seek to join in the Plaintiffs' claims that, during their employment at Momentum, they were subjected to racial discrimination and a hostile work environment, retaliated against for engaging in protected activity, and undercompensated for their labor in violation of state and federal law. (Id. ¶¶ 54-265). Plaintiffs bring their claims as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of "[a]ll Black (including Black/dark skinned Hispanic) Field Installation Department employees who worked for Momentum out of its New York warehouse during the full statutory period, including but not limited to, Installers, electricians, Roof Leads and foreman" during the "applicable liability or statute of limitations period[.]" (Id. ¶¶ 266-67).

## DISCUSSION

Plaintiffs seek to amend the Second Amended Complaint to include the Proposed Plaintiffs and their claims, which include claims of race discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981, the NYSHRL, the NYCHRL, and Title VII of the Civil Rights Act of 1964, as well as claims under the NYLL and the FLSA. (Pls.' Mem.[2] at 1).

Momentum objects to the amendments adding claims of discrimination, hostile work environment, and retaliation under Section 1981, the NYSHRL, and the NYCHRL on behalf of Proposed Plaintiffs Perry, Dominguez, Taylor, Burke, Brown, Badiau, and Mercure, claiming that these amendments are futile because those Proposed Plaintiffs have failed to allege sufficient facts to support their claims. (Def.'s Mem.[3] at 14). Momentum also objects to the amendments

---

[2] Citations to "Pls.' Mem." refer to plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Leave to Amend the Second Amended Complaint and File a Third Amended Complaint, filed on August 13, 2021, ECF No. 217.

[3] Citations to "Def.'s Mem." refer to Momentum's Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to File Third Amended Complaint, filed on September 15, 2021, ECF No. 233.

adding Benjamin, Senior, and Zapata, claiming that they are futile because those individuals agreed to arbitrate all of their claims before seeking to join this litigation as named plaintiffs. (Id. at 2).  Momentum does not challenge as futile the amendments adding claims of discrimination, hostile work environment, and retaliation under Section 1981, the NYSHRL, and the NYCHRL on behalf of Fowler.

In addition to its objections tailored to specific Proposed Plaintiffs, Momentum further objects to the entirety of the Proposed Complaint on the grounds that allowing a further amendment would unduly prejudice the defense.

I.    The Alleged Facts Relevant to the Proposed Plaintiffs' Claims

According to the Proposed Complaint, defendant Murawski, whom the Proposed Complaint identifies as white, regularly used the word "n*****" in front of and directed towards Black employees during the course of the Proposed Plaintiffs' employment with Momentum. (Compl. ¶ 3).  In fact, Murawski and defendant Silberman, who is of Caucasian and South Asian descent, allegedly referred to a crew comprised predominantly of Black employees as the "n****" crew."  (Id. ¶¶ 3, 5).  The plaintiffs have published images of messages that Silberman allegedly posted on Facebook in which he used elisions of the same slur.  (Id. ¶ 5).  The plaintiffs also note a recording in which Murawski admitted to using the slur while working.  (Id. ¶ 7). Murawksi also allegedly denominalized the slur and sometimes transformed it into the phrasal verb "n*****'d up" to refer to ill performed work.  (Id. ¶ 3).  In fact, according to the Proposed Complaint, Murawski once went so far as to refer to a project as "a n***** like" plaintiff Murrell.  (Id.)  Murawski also allegedly referred to black employees as "boy," a loaded term with "a patently racist" historical root.  (Id.)  When plaintiff Beswick protested Murawski's use of the word "boy," Murawski allegedly responded by claiming that he did not "give a f*** about how a

n***** thinks." (Id.) Murawski's vehicle allegedly bore a bumper sticker decrying "[t]his is OUR America – Get the Fuck Out!" (Id.)

The Proposed Complaint also alleges that, in addition to Murawski and Silberman, other white employees used racial slurs, told racist jokes, mocked the way that Black employees spoke, asserted that Black employees were not full human beings, and taunted Black employees with negative stereotypes. (Id.)

Proposed Plaintiff Maurice Perry alleges that he "found it impossible to succeed at Momentum because he was subjected to disparate treatment on the basis of his race." (Compl. ¶ 155). He gives as an example an occasion during which he was "verbally berated by his manager," a foreman named Frank Riva, "for arriving just eight minutes late to work." (Id. ¶¶ 75, 156). Perry claims that he "routinely witnessed" white employees arrive late without suffering similar treatment. (Id.) Perry alleges that, despite his "excellent work performance, he was continuously singled out and harassed by Mr. Riva." (Id. ¶ 157). On April 12, 2019, less than six months after starting with Momentum, Perry complained to the company's human resources department, stating as follows: "I want to make a complaint[.] I'm starting to feel singled out, everyday [sic] I come to work for the last week[,] [sic] I have been hearing things said about me not working, but no one can tell me what work I'm not doing." (Id. ¶ 158). Three days after Perry complained, Riva informed him that he did not like Perry's "attitude" or "hustle" and Momentum terminated Perry's employment. (Id. ¶¶ 3, 159). When he pressed for reasons for his termination, Perry was referred to the one instant that he had arrived late to work. (Id. ¶ 160). Perry made another complaint to Momentum, this time explicitly alleging racial discrimination, and received a call the next day confirming his termination. (Id. ¶¶ 161-62).

Proposed Plaintiff Antwan Senior, who began working at Momentum in September 2017 and still worked there when the Proposed Complaint was filed, similarly alleges that he was denied opportunities and discriminated against based on his race.  (Id. ¶¶ 163-64).  Senior alleges by way of anecdote that he and another Black employee were taunted by a foreman, Jaycee Morejon, with the word "n*****."  (Id. ¶¶ 165-66).  Senior claims that he was transferred out of Morejon's crew the following day.  (Id. ¶ 167).  Senior alleges that he reported this incident several times to no end.  (Id. ¶¶ 168-72).  Senior also claims that, despite his many years of employment at Momentum, he has been denied promotions that have been given to less experienced white employees and Senior also claims that his pay is less than that of his white peers.  (Id. ¶¶ 174-76).

According to the Proposed Complaint, Proposed Plaintiff Pablo Dominguez began working for Momentum as an Installer around December 2018.  (Id. ¶ 177).  Dominguez alleges that he was discriminated against as a Black Hispanic while working at Momentum.  (Id. ¶ 178).  He alleges that he "and other minorities" were given "the most physically laborious duties" on the installation projects to which they were assigned.  (Id.)  For example, Dominguez claims that they were made to carry tools and heavy equipment up and down ladders while white crew members were given less intense work.  (Id.)  Dominguez also claims that he injured his hand while working for Momentum and that Momentum ignored his injury.  (Id. ¶ 179).

Dominguez further alleges that Riva "routinely" publicly berated and embarrassed minority employees, including Dominguez, if they arrived late to their daily morning meetings, and that white employees did not receive similar treatment.  (Id. ¶ 180).  Moreover, according to Dominguez, minority employees were scapegoated for white employees' mistakes, and

Dominguez recalls one instance in which a foreman violently berated him for a mistake made by white employees.  (Id. ¶ 181).

Dominguez also claims that it was "common" to hear racial slurs while working on the job sites.  (Id. ¶ 182).  Dominguez claims that a foreman, whom he identifies only as "Pete," and Murawski would routinely belittle Black employees by describing their actions and work as "n***** shit."  (Id. ¶¶ 182-84).  Dominguez asserts that, in February 2020, he confronted Pete for using racial slurs and was fired within weeks of the confrontation.  (Id. ¶¶ 185-86).

According to the Proposed Complaint, Proposed Plaintiff Luis Taylor began working for Momentum in April 2018.  (Id. ¶ 187).  Prior to working for Momentum, Taylor "received formal training in electrical installation" and worked for "approximately" 24 years as an electrician.  (Id. ¶ 189).  Taylor alleges that, during his employment with Momentum, he was discriminated against because of his race and given unequal pay.  (Id. ¶ 190).  Taylor claims that, despite having more than 20 years of experience, he received the same pay as an 18-year-old white Installer who had no prior training.  (Id. ¶ 191).  He also claims that Momentum's Long Island field crews were segregated by race, and that Silberman once referred to Taylor's crew as the "n***** crew."  (Id. ¶¶ 192-94).  Moreover, Silberman and a foreman named Tom "frequently" called Black employees "n******."  (Id. ¶ 196).  According to the Complaint, Taylor witnessed Silberman and other white foremen "harass minority employees by shouting degrading and demeaning racist remarks at them as they laughed."  (Id. ¶ 197).

Taylor also claims that the minority-staffed crews were given more difficult assignments and made to work longer hours than the white-staffed crews.  (Id. ¶ 194).  Moreover, according to the Proposed Complaint, Taylor "regularly" witnessed the termination of minority employees for minor infractions, like being a few minutes late, for which white employees were not

punished.  (Id. ¶ 195).  Taylor claims that he was fired after getting into a dispute with plaintiff Kenneth Sapp "that in no way rose to the level of a fireable offense[,]" and alleges that when similar disputes arose amongst white employees, there were no repercussions for those individuals.  (Id. ¶ 198).

The Proposed Complaint claims that Proposed Plaintiff Vaughn Burke worked for Momentum from November 2018 until January 2019.  (Id. ¶ 199).  Burke alleges that, during his employment with Momentum, he was subjected to discriminatory treatment "unlike anything he had previously experienced in his life or at other places of employment."  (Id. ¶ 201).  Burke claims that his foreman would "regularly" ask whether he "wanted fried chicken for lunch" in front of white crew members to mock Burke; he claims that this "became a hurtful running joke amongst his crew" and that he was asked this degrading question "almost weekly."  (Id. ¶ 202). Burke alleges that Riva, Murawksi, and Silberman "were three of the most frequent perpetrators of racist comments and behavior."  (Id. ¶ 203).

The Proposed Complaint also alleges that Burke observed frequent berating and baseless termination of Black employees, and he describes "a monthly tradition whereby Mr. Riva would have Black crew members line up in front of him and go down the line and ask each Black Installer, 'why should we let you stay, what are you doing?'"  (Id. ¶ 204).  Riva would allegedly conclude this ritual by terminating one or more Black employees and then have security personnel walk them off the premises.  (Id. ¶ 204).  After only several months working for Momentum, Burke claims that he was fired in this "humiliating, shocking, and discriminatory fashion."  (Id. ¶ 205).

The Proposed Complaint claims that Proposed Plaintiff Andrae Brown worked for Momentum as an Installer from November 2018 through April 2019.  (Id. ¶ 206).  Brown alleges

that throughout his employment with Momentum, he "routinely overheard Momentum managers use racist language to refer to minority employees and heard the slur 'n*****' used frequently to refer to Black employees." (Id. ¶ 207). Brown also alleges that he was paid $17 an hour, which was less than similarly situated white Installers who received $20 an hour. (Id. ¶ 208). Brown claims that he was terminated despite having worked for over six months without issue and was told only that "he was not at the level he was supposed to be." (Id. ¶ 209).

Proposed Plaintiff Antonio Zapata claims to have worked for Momentum from October 2017 until January 1, 2020. (Id. ¶ 210). Zapata, who describes himself as "Black Hispanic," alleges that, during his employment with Momentum, he was discriminated against based on his race and that he witnessed other minority employees endure discriminatory treatment. (Id. ¶¶ 211, 214). Zapata, who "is not a strong English speaker," claims that he was belittled and ridiculed for speaking Spanish and asking for clarification when he received directions in English. (Id. ¶¶ 212-13). Zapata also claims that, among other disparaging comments made by Mometum's managers, Riva called "predominantly Black and Hispanic field crews, 'fucking n***** motherfuckers,'" and Adams and Silberman called Zapata's crew, which was comprised of exclusively "Black and Hispanic Installers," the "n***** crew." (Id. ¶¶ 215, 217). The Proposed Complaint alleges that, "after years of working hard for Momentum and enduring constant racial discrimination, Mr. Zapata was constructively discharged in January 2020." (Id. ¶ 218).

The Proposed Complaint alleges that Proposed Plaintiff Kevin Fowler began working at Momentum in May 2017, "almost" at the firm's "inception," and was "the first Black Installer hired by Momentum." (Id. ¶ 219). Fowler claims that, before beginning to work for Momentum, he received a certification in solar installation and gained "several years of field

experience." (Id. ¶ 220).  Fowler also claims that he was discriminated against based on his race while he was employed at Momentum.  (Id. ¶¶ 221-22).

Specifically, Fowler alleges that the work crews were "segregated by race[,]" and that Black employees were expected to do more manual labor than white employees—and in fact were mocked by at least one foreman while trying to complete difficult manual tasks.  (Id. ¶¶ 222, 225, 226).  He also recounts that white employees who made mistakes were given opportunities that he was denied even though he did not make similar mistakes.  (Id. ¶ 223). According to the Proposed Complaint, crews composed of all Black employees "routinely finished their assignments quicker than crews of all white employees, in large part because they had more experience and training.  The Black crews were then expected to help the white crews finish their job assignments while the white crews would taunt them and make racist remarks." (Id. ¶ 226).  Fowler claims that he once attempted to correct how Riva was working, which enraged Riva and caused him to retaliate against Fowler by assigning him the most labor-intensive jobs and by disparaging his work.  (Id. ¶ 227).  Moreover, according to Fowler, Black employees were routinely fired without cause or for minor infractions while white employees were given substantially more leeway.  (Id. ¶ 229).

Fowler claims that, while working for Momentum he was called "'n*****' by managers and other employees on a near weekly basis[,]" and notes specifically that Murawski "frequently" used this slur in reference to Fowler and other Black employees.  (Id. ¶ 224). Fowler also asserts that he was called a "monkey" by an employee named Bill Parkinson, who once said "[w]e don't need fucking Monkeys running this company."  (Id. ¶ 225).  When Fowler complained about another employee's calling him a racial slur to his foreman, the foreman told Fowler that the other employee had done nothing wrong and that Fowler clearly struggled with

receiving directions.  (Id. ¶ 228).  Fowler also claims that Silberman referred to the town of Hempstead as "'Shitshead' because of the large population of Black people that lived there." (Id. ¶ 230).  According to the Proposed Complaint, Fowler was "constructively discharged" from Momentum in 2019 "because he could not bear Mr. Riva's constant retaliation and the general racism and discrimination that permeated the work environment."  (Id. ¶ 231).

According to the Proposed Complaint, Proposed Plaintiff Morens Badiau worked for Momentum as an Installer between November 2017 and May 2018.  (Id. ¶ 232).  Badiau, who is Black and of Haitian descent, claims that he was discriminated against based on his race throughout his employment with Momentum.  (Id. ¶ 233).  Badiau claims that he "witnessed nearly every, if not every, Black employee with whom he worked at Momentum be fired during his employment, while lesser performing white employees were retained."  (Id. ¶ 234).  Badiau alleges that he and other Black employees were "frequently required to work more than their white peers[,]" and "on several occasions, white Momentum managers and foremen would do nothing while the white Installers on Mr. Badiau's crew stood around and merely watched Mr. Badiau and other Black Installers on their crew work on installation projects without contributing to the projects."  (Id. ¶ 235).  According to Badiau, he was also "inexplicably" paid $17 an hour while white employees who held the same title were paid $22 an hour.  (Id. ¶¶ 236-37).

According to the Proposed Complaint, "around May 2018," Badiau complained to Momentum about the discrepancy between his pay and his white peers' pay.  (Id. ¶ 238). "Within days of engaging in this protected activity," Momentum terminated Badiau and claimed that it did so because he had been 15 minutes late for work.  (Id. ¶ 239).

The Proposed Complaint alleges that Proposed Plaintiff Giovanni Benjamin began working for Momentum "around" October 2019.  (Id. ¶ 240).  According to the Proposed

Complaint, Riva and Silberman, who managed Benjamin, used the slur "n*****" to refer to Benjamin and other Black employees. (Id. ¶ 241). "The use of the vile slur 'n*****' was so common that Mr. Benjamin became accustomed to hearing himself and other Black crew members called 'n*****.'" (Id. ¶ 242). Benjamin also alleges that Silberman and Riva "frequently told racist, insulting 'jokes' in front of Mr. Benjamin, for example, saying, 'Black people love grape soda' and 'Black people love fried chicken[,]'" which Benjamin found "extremely humiliat[ing]." (Id. ¶ 243). "The racial harassment was so debilitating that Mr. Benjamin came to work each day scared [and] fearful that if he spoke up and complained about the discriminatory treatment he would be fired," an impression that Benjamin alleges was reinforced by the fact that he had witnessed Momentum fire other Black crew members "without any cause." (Id. ¶ 244).

The Proposed Complaint alleges that Benjamin asked to be transferred to a crew other than Silberman's crew, explaining that Silberman's jokes made him "uncomfortable," but Momentum ignored his request. (Id. ¶ 245). In November 2019, shortly after requesting a transfer to another crew, Momentum terminated Benjamin's employment "without reason." (Id. ¶ 246).

The Proposed Complaint alleges that Proposed Plaintiff Christopher Mercure worked for Momentum from "approximately" October 2017 until January 2018. (Id. ¶ 247). Mercure worked as an Installer under Silberman and was "subjected to racial discrimination on a near daily basis." (Id. ¶¶ 248-49). According to Mercure's allegations in the Proposed Complaint, Silberman "made no effort to hide his blatant dislike for Black people." (Id. ¶ 249). Mercure offers as an example of Silberman's racial animus that he segregated Installers based on race, and placed Mercure in a crew "comprised of only minority Installers." (Id. ¶ 250). Silberman

also allegedly spoke to Mercure in a "demeaning manner or condescending tone" that he did not use with white crew members.  (Id. ¶ 251).  Mercure also alleges that he was paid $14 an hour while white Installers "with equal or less experience" were paid $17 an hour.  (Id. ¶ 252).  "[A]round" January 2018, Momentum fired Mercure "for no reason[,]" which Mercure claims was common for Black Installers who were often "fired without any reason other than because of the color of their skin."  (Id. ¶ 253).

In addition to the allegations of racial discrimination recounted above, the Proposed Complaint alleges that the Proposed Plaintiffs were "subjected to a host of federal and state wage and hour violations which equally affected them and deprived them of their lawfully earned and entitled wages."  (Id. ¶ 254).  The Proposed Complaint claims that Momentum required the Proposed Plaintiffs to purchase "tools and other equipment" that they needed to perform their work, and that they were never reimbursed for these expenses.  (Id. ¶ 255).  As a result, the Proposed Plaintiffs "had to expend up to thousands of dollars purchasing these tools and equipment and/or uniforms, and, in some instances, had to purchase tools multiple times because they were lost or stolen." (Id. ¶¶ 256-57).

Moreover, according to the Proposed Complaint, Momentum "automatically" deducted 30 minutes of compensable time each day from the Proposed Plaintiffs' pay, purportedly for a "break."  (Id. ¶ 259).  According to the Proposed Complaint, however, "due to the incredibly demanding nature of their jobs," the Proposed Plaintiffs "rarely, if ever, ha[d] the opportunity to take a break, much less an uninterrupted 30-minute meal break during their workdays."  (Id. ¶¶ 259, 261).  Similarly, according to the Proposed Complaint, for several months in 2017, Momentum refused to pay the Proposed Plaintiffs for time spent traveling to and from job sites and Momentum's warehouses, even though the travel was performed in Momentum's vehicles.

(Id. ¶ 262).  "While Momentum eventually reversed its position and compensated employees for this travel time, it failed to pay back the wages [that] it owed."  (Id. ¶ 265).

II.   Legal Standard - Motion to Amend a Pleading to Add Parties

When a party seeks to amend its pleading outside of the time limit during which the party may do so as a matter of course, that party must obtain either "the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Thus, where the defendants refuse to consent to the amended complaint, as here, the party seeking the amendment must obtain permission from the court.  Id.  Although the Federal Rules of Civil Procedure command that courts "shall" give leave to amend "freely . . . when justice so requires," Fed. R. Civ. P. 15(a), the decision whether to grant a motion to amend pleadings remains within the court's discretion.  See Zahra v. Town of Southhold, 48 F.3d 674, 685 (2d Cir. 1995).  While courts have broad discretion in this context, the Second Circuit has instructed that "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, . . . or undue prejudice to the non-moving party."  Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); accord McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200-01 (2d Cir. 2007).  The party opposing amendment, however, bears the burden of demonstrating good reason to deny the motion.  Speedfit, LLC v. Woodway USA, Inc., No. 13 CV 1276, 2015 WL 6143697, at *3 (E.D.N.Y. Oct. 19, 2015); see also Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y. 1994) (citing Panzella v. Skou, 471 F. Supp. 303, 305 (S.D.N.Y. 1979)).

Where proposed amendments include adding a party, as here, the amendments are technically governed by Rule 21, which provides that "the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21; Duling v. Gristede's Operating Corp., 265 F.R.D. 91,

96–97 (S.D.N.Y. 2010); Garcia v. Pancho Villa's of Huntington Vill., Inc., 268 F.R.D. 160, 165 (E.D.N.Y. 2010); see also 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure, Civil 3d § 1688 (West 2021) (noting that there are situations in which "both" rules 15 and 21 "appear to apply"). However, the "same standard of liberality" applies under both Rule 15 and Rule 21. Duling v. Gristede's Operating Corp., 265 F.R.D. at 96–97 (quoting FTD Corp. v. Banker's Trust Co., 954 F. Supp. 106, 109 (S.D.N.Y.1997)); Hai Yang Liu v. 88 Harborview Realty, LLC, 5 F. Supp. 3d 443, 450 n.1 (S.D.N.Y. 2014).

III.    Analysis

Plaintiffs argue that the proposed amendments are appropriate because "the proposed additional plaintiffs are substantially similar to the named plaintiff," and courts in this circuit have found that amendments in similar cases would not cause undue prejudice to defendants. (Pls.' Mem. at 2 (citing Cortigiano v. Oceanview Manor Home For Adults, 227 F.R.D. 194, 202 (E.D.N.Y. 2005); In re Osage Expl. Co., 104 F.R.D. 45, 49 (S.D.N.Y. 1984))). Plaintiff observes that, like the New York Plaintiffs, the Proposed Plaintiffs are all Black "current or former" Momentum "employees" whose job "focus . . . was to help install solar paneling on the residences of Momentum's clients." (Id. at 2-3). The Proposed Plaintiffs' claims of discrimination and retaliation are "substantially similar" and "nearly identical" to the New York Plaintiff's claims. (Id. at 3-5). Thus, plaintiffs argue that because the Proposed Plaintiffs' claims "involve the substantially [sic] same facts, actors, witnesses, and conduct as the operative claims of the New York Plaintiffs," "the addition of the new plaintiffs will not burden or unduly delay the litigation of this matter." (Id. at 5).

Moreover, according to plaintiffs, the defendants will not suffer any undue prejudice if the motion to amend is granted. (Id.) Plaintiffs assert that their motion to amend the complaint

was made in good faith and without a dilatory motive.  (Id. at 6).  Plaintiffs observe that

defendants have known for months that they intended to amend the complaint to add the

Proposed Plaintiffs, and thus have had time to prepare for the amendment.  (Id.)  In addition,

given that the case is in its "early stages" and the parties have not yet conducted depositions,

"[a]n amendment to the pleadings will not drastically affect any discovery timeframes or

interfere with the flow of litigation."  (Id.)  In fact, plaintiffs assert that, if their motion to amend

the Second Amended Complaint is denied, the Proposed Plaintiffs "will be left with no choice

but to file a separate action, meaning that claims that contain overlapping facts and issues may be

decided by two separate courts, creating the potential [for] inconsistent decisions, and certainly

an inefficient use of resources."  (Id. at 6-7).

Momentum argues in response that plaintiffs' motion should be denied on two grounds:

(1) because some of the Proposed Plaintiffs' claims are futile, and (2) because plaintiffs' motion

to amend the Second Amended Complaint is pretextual and prejudices the defense.  Specifically,

Momentum challenges the amendments adding discrimination, hostile work environment, and

retaliation claims under Section 1981, the NYSHRL, and the NYCHRL on behalf of Proposed

Plaintiffs Perry, Dominguez, Taylor, Burke, Brown, Badiau, and Mercure as futile because,

according to Momentum, those Proposed Plaintiffs have failed to allege sufficient facts to

support their claims.  Momentum challenges the amendments adding Benjamin, Senior, and

Zapata as plaintiffs as futile because they signed Arbitration Agreements, and thus cannot pursue

any of their claims in this forum.  In addition to its objections tailored to specific Proposed

Plaintiffs, Momentum challenges the entirety of the Proposed Complaint as unduly prejudicial.

The Court addresses each of these arguments in turn below.

A.  Futility

An amendment is futile, and therefore must be denied, when it fails to state a claim on which relief could be granted.  Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 459 (S.D.N.Y. 2012) (citing Dougherty v. North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)).  To determine futility, "[t]he court applies the same standard as that for a motion to dismiss under Rule 12(b)(6)."  Konrad v. Epley, No. 12 CV 4021, 2013 WL 6200009, at *20 (E.D.N.Y. Nov. 25, 2013); In re Tribune Co. Fraudulent Conv. Litig., 10 F.4th 147, 175 (2d Cir. 2021).  Thus, a proposed amendment is futile if it does not "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To survive scrutiny under this standard, the proposed amendment must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Id.  In making this determination, courts accept all facts alleged by the moving party as true and construe any ambiguities in favor of the moving party. Konrad v. Epley, 2013 WL 6200009, at *20; see also DiFolco v. MSNBC Cable, LLC, 622 F.3d 104, 110-11 (2d Cir. 2010).

The Proposed Plaintiffs seek to raise discrimination, hostile work environment, and retaliation claims against all the defendants under 42 U.S.C. § 1981, the NYSHRL, the NYCHRL, and Title VII of the Civil Rights Act of 1964.  The Proposed Plaintiffs also allege violations under the NYLL and the FLSA.

Momentum argues that the amendments adding claims of discrimination, hostile work environment, or retaliation under Section 1981, the NYSHRL, and the NYCHRL on behalf of Proposed Plaintiffs Perry, Dominguez, Taylor, Burke, Brown, Badiau, and Mercure are futile because those Proposed Plaintiffs have failed to allege sufficient facts to support their claims.

(Def.'s Mem. at 14).  Momentum argues that the amendments adding Benjamin, Senior, and Zapata are futile because those individuals agreed to arbitrate all of their claims before seeking to join this litigation as named plaintiffs.  (Id. at 2).

       1.  42 U.S.C. § 1981 Claims

The Proposed Plaintiffs claim in their First Cause of Action that defendants "discriminated against" the Proposed Plaintiffs "by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or remedy a hostile work environment and disparate treatment, including with respect to pay and other terms and conditions of employment, based on race and/or color." (Compl. ¶¶ 368-71).  The Proposed Plaintiffs allege in their second cause of action that defendants violated Section 1981 through willful "unlawful retaliatory conduct." (Id. ¶¶ 372-75).

Under 42 U.S.C. § 1981(a),

> all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contract, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(b) defines the term "make and enforce contracts" so as to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  "This language has been interpreted to encompass discrimination in private employment."  Wimberly v. automotiveMastermind, Inc., No. 20 CV 2880, 2021 WL 2043623, at *4 (S.D.N.Y. May 21, 2021) (citing Johnson v. Ry. Express Agency, 421 U.S. 454, 459–60 (1975); Ofori–Tenkorang v. Am. Int'l Grp., Inc., 460 F.3d 296, 300 (2d Cir. 2006)).

To establish a claim under Section 1981, a plaintiff must allege facts showing that: (1) the plaintiff is a member of a racial minority; (2) that the defendants harbored the intent to discriminate based on race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute. Wimberly v. automotiveMastermind, Inc., 2021 WL 2043623, at *4 (citing Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000)); Chinn v. City Univ. of New York Sch. of Law at Queens Coll., 963 F. Supp. 218, 226 (E.D.N.Y. 1997) (citing Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993)). Section 1981 reaches "only purposeful" discrimination, Francis v. Kings Park Manor, Inc., 992 F.3d 67, 80 (2d Cir. 2021) (quoting Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 389 (1982)); see also Sherman v. Town of Chester, 752 F.3d 554, 567 (2d Cir. 2014)), thus, "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, [the plaintiff] would not have suffered the loss of a legally protected right." Comcast Corp. v. National Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020).

a. Discrimination

Claimants asserting discrimination claims under Section 1981 must allege two elements: (1) that the employer discriminated against the claimant (2) because of that person's race, color, religion, sex, or national origin. Bell v. SL Green Realty Corp., No. 19 CV 8153 (LGS), 2021 WL 516575, at *5 (S.D.N.Y. Feb. 11, 2021) (citing Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015)). Discrimination claims in the context of an employment discrimination case may be shown individually or by a pattern or practice alleged by a "group of plaintiffs, entitled to be certified as a class[.]" United States v. City of New York, 717 F.3d 72, 83 (2d Cir.2013); see Chin v. Port Auth. of New York & New Jersey, 685 F.3d 135, 150 (2d Cir.2012).

"Pattern-or-practice disparate treatment claims focus on allegations of widespread acts of intentional discrimination against individuals."  Robinson v. Metro–N. Commuter R.R. Co., 267 F.3d 147, 158 (2d Cir.2001); see City of New York, 717 F.3d at 83; Henderson v. City of New York, 818 F.Supp.2d 573, 578 (E.D.N.Y.2011).  While an individual claim requires proof of the intent to discriminate against one person, a pattern or practice claim requires a showing that (1) the alleged racial discrimination amounted to more than sporadic acts of discrimination, constituting the defendant's "standard operating procedure" or their "regular rather than the unusual practice," and (2) the discrimination was directed at a class of victims.  City of New York, 717 F.3d at 83 (quoting International Bhd. of Teamsters v. United States, 431 U.S. 324, 336 (1977)).

The Proposed Plaintiffs allege that they were segregated by race, treated as inferior to their white peers, paid less, made to work more strenuous jobs, suffered harsher punishments than their white peers, denied promotions offered to less experienced white employees, and subjected to ridicule and animus based on their race.  Given the allegations in the proposed amended Complaint, the Proposed Plaintiffs have sufficiently alleged racial discrimination under Section 1981.

### b.  Hostile Work Environment

To establish a hostile-work-environment claim under Section 1981, a plaintiff must show that the workplace was "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of" the plaintiff's "employment were thereby altered." Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 723–24 (2d Cir. 2010) (quoting Alfano v. Costello, 294 F.3d 365, 373–74 (2d Cir. 2002)).  "A hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can

reasonably be termed pervasive." Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir.1987). To meet this standard, the plaintiff must usually "show 'more than a few isolated incidents of racial enmity.'" Williams v. County of Westchester, 171 F.3d 98, 100–01 (2d Cir. 1999) (*per curiam* ) (quoting Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986)). A plaintiff can establish a hostile work environment through evidence of a single incident of harassment, however, where the harassment is "extraordinarily severe." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir.2000); Alfano v. Costello, 294 F.3d at 374.

To establish a Section 1981 claim based on a hostile work environment theory, a plaintiff also must show "a specific basis . . . for imputing the conduct that created the hostile environment to the employer." Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 72 (2d Cir. 2000); Abdelal v. Kelly, No. 13 CV 04341, 2020 WL 1528476, at *9 (S.D.N.Y. Mar. 30, 2020). Here, because the Proposed Complaint alleges conduct by the Proposed Plaintiffs' supervisors and managers, Momentum can be held vicariously liable for those individuals' actions. See Wiercinski v. Mangia 57, Inc., 787 F.3d 106, 113 (2d Cir. 2015); accord Garcia v. NYC Health & Hosps. Corp., No. 19 CV 997, 2019 WL 6878729, at *6 (S.D.N.Y. Dec. 17, 2019).

According to the Proposed Complaint, defendants belittled, mocked, and abused each of the Proposed Plaintiffs because of their race in myriad ways. While the specific allegations vary between the Proposed Plaintiffs, they cumulatively allege that they were regularly called demeaning racial slurs, mocked with negative stereotypes, segregated by race, subjected to harsher punishments than their white peers, paid less than their white peers, made to perform more strenuous and dangerous tasks than their white peers, denied promotions given to less-

21

qualified white employees, and fired without cause or under pretenses masking retaliation for the their complaints about their treatment by white supervisors.

After having reviewed each of the Proposed Plaintiffs' factual allegations under the liberal pleading standard in play here, the Court finds that they have sufficiently alleged a workplace environment so severely permeated with racial discrimination, intimidation, ridicule, and insult as to allege a hostile work environment under Section 1981. This claim, as raised by the Proposed Plaintiffs, is therefore not futile.

c. Retaliation

To properly plead a case of retaliation under 42 U.S.C. § 1981, "an employee must show '(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" Amaya v. Ballyshear LLC, 295 F. Supp. 3d 204, 226 (E.D.N.Y. 2018) (quoting Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir. 2003)); see also Taitt v. Chemical Bank, 849 F.2d 775, 777 (2d Cir. 1988).

This test's first prong "requires plaintiff to have taken 'action . . . to protest or oppose statutorily prohibited discrimination.'" Hayes v. Cablevision Sys. New York City Corp., No. 07 CV 2438, 2012 WL 1106850, at *16 (E.D.N.Y. Mar. 31, 2012) (quoting Gore v. Health Rsch. Inst., No. 02 CV 2432, 2007 WL 1120456, at *13 (E.D.N.Y. Apr. 16, 2007)); see also Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 693 (2d Cir. 1998); Fouche v. St. Charles Hosp., 64 F. Supp. 3d 452, 458 (E.D.N.Y. 2014). The complaint must put the employer on notice that the employee feels that he or she has been discriminated against. Hayes v. Cablevision Sys. New York City Corp., 2012 WL 1106850, at *16.

While the complaint "need not mention discrimination or use particular language, . . . ambiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." Id. (quoting Gore v. Health Rsch. Inst., 2007 WL 1120456, at *13); see also Amaya v. Ballyshear LLC, 295 F. Supp. 3d at 227 (quoting Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 108 (2d Cir. 2011)) (finding that a complaint constituted protected activity where it could "reasonably have [been] understood" as a complaint about conduct prohibited by Section 1981). When determining whether a complaint was sufficiently specific, "[c]ourts must assess an employee's complaint in context, rather than in isolation." Eckhart v. Fox News Network, LLC, No. 20 CV 5593, 2021 WL 4124616, at *20 (S.D.N.Y. Sept. 9, 2021) (citing Lenzi v. Systemax, Inc., 944 F.3d 97, 113 (2d Cir. 2019)).

The second prong of the test requires that the claimant suffer "[a]n adverse employment action[,]" which "is a materially adverse change in the terms and conditions of employment." Mathirampuzha v. Potter, 548 F.3d 70, 78 (2d Cir.2008). The alleged change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012) (quoting Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006)).

In regards to the third prong of the test, "[p]roof of causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment[.]" DeCintio v. Westchester Cty. Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987) (emphasis in the original) (citing Davis v. State University of New York, 802 F.2d 638, 642 (2d Cir. 1986)).

Momentum only challenges the amendments adding claims of retaliation under Section 1981 on behalf of Maurice Perry, Pablo Dominguez, Luis Taylor, Vaugh Burke, Andrae Brown,

23

and Christopher Mercure.  As the Proposed Complaint contains sufficient factual allegations to support plausible retaliation claims on behalf of the other Proposed Plaintiffs, this Court has limited its analysis to only these six challenged Proposed Plaintiffs.

i.   Maurice Perry

Momentum argues that Perry has failed to allege retaliation under Section 1981 because, "while it may be true that Perry was terminated three days after" he complained by email about being singled out, "there is nothing" in Perry's complaint that constituted a protected activity. (Def.'s Mem. at 24).  According to Momentum, "[t]he email does not contain a single complaint of racial discrimination, racial harassment or anything else that could conceivably be considered protected activity."  (Id.)  "The email therefore does not constitute protected activity, as a matter of law."  (Id. (citing Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d 590, 594 (2d Cir. 1988)).

Plaintiffs reply that Perry was not required to use specific "magic" words such as "discrimination," "harassment" or "hostile work environment" in order for his complaint to have constituted protected activity.  (Pls.' Reply[4] at 17 (citing Inguanzo v. Hous. & Servs., Inc., No. 12 CV 8212, 2014 WL 4678254, at *21 (S.D.N.Y. Sept. 19, 2014)).  "Rather," according to plaintiffs, "any expression or disapproval of employment discrimination, whether formal or informal, is protected."  (Id.)  Plaintiffs argue that, given the "litany of complaints of racial discrimination from its Black employees[,]" Perry's complaint that he was "'singled out' for unfair treatment at least plausibly put [d]efendant on notice that he was making a complaint of discrimination."  (Id. (citing Eckhart v. Fox News Network, LLC, 2021 WL 4124616, at *20).

---

[4] Citations to "Pls.' Reply" refer to plaintiffs' Memorandum of Law in Further Support of Plaintiffs' Motion for Leave to Amend the Second Amended Complaint and File a Third Amended Complaint, filed on October 1, 2021, ECF No. 239.

Viewing the facts in the light most favorable to the plaintiffs, this Court finds that, for purposes of amending the Second Amended Complaint, the plaintiffs have plausibly alleged that Perry engaged in protected activity and that Momentum retaliated by terminating Perry's employment three days later.  By 2019, when Perry first complained about feeling "singled out," multiple other employees had complained about racial discrimination or confronted their supervisors and foreman about their treatment.  (Compl. ¶¶ 7-12, 17, 69, 80-81, 85, 92, 109, 116, 125, 131, 136-37, 238-39).  Moreover, to the extent that Perry's initial complaint about being singled out was ambiguous, he explicitly stated in a subsequent email that he believed that he had been discriminated against while employed by Momentum.  (Id. ¶ 161).  According to the Proposed Complaint, Perry was only "formally" terminated after this second complaint.  (Id. ¶ 162).  Thus, the Court concludes that Perry's claim of retaliation would not be futile.

ii.   Pablo Dominguez

Momentum argues that Dominguez has failed to allege sufficient facts to support either that he engaged in protected activity or that his confronting Pete for using a racial slur was causally related to his termination, which occurred several months later.  (Def.'s Mem. at 25 (citing Harrisman v. City of New York Department of Transporation, 2020 WL 5211043, 19 CV 2986 (S.D.N.Y. 2020); Chukwueze v. NYCERS, 891 F. Supp. 2d 443, 457 (S.D.N.Y. 2012); McDowell v. North Shore–Long Island Jewish Health Sys., Inc., 788 F. Supp. 2d 78, 83 (E.D.N.Y. 2011); Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).

Plaintiffs argue that Momentum advocates for "an overly narrow definition of what constitutes protected activity."  (Pls.' Reply at 18).  According to plaintiffs, Dominguez's objection to Pete's use of a racial slur was enough.  (Id.)  Plaintiffs argue further that "ample cases support a determination that a three-month time period between protected activity and a

subsequent adverse action is close enough in time to support a claim of retaliation."  (Id. citing Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010)).  Thus, the lack of close temporal proximity is not definitive here.  (Id.)

Protected activity need not take the form of a formal complaint.  Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 65 (2d Cir. 1992).  Moreover, as plaintiffs observe, the Second Circuit has refused to "draw[] a bright line defining . . . the outer limits beyond which a temporal relationship is too attenuated to establish causation."  Gorzynski v. JetBlue Airways Corp., 596 F.3d at 110; Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 555 (2d Cir. 2001) (holding that the passage of five months was not too much to defeat a retaliation claim).  Thus, given the liberal pleading standard, this Court finds that Dominguez's claim of retaliation under Section 1981 is not futile.

### iii.   Luis Taylor

Momentum argues that Taylor has "failed to allege that he engaged in any protected activity at all and does not allege that any adverse employment action was taken against him in retaliation for engaging in any protected activity."  (Def.'s Mem. at 26).  Plaintiffs have failed to offer an argument in reply.

This Court finds that it would be futile to amend the complaint to add retaliation claims on behalf of Taylor, as Taylor has failed to allege any facts supporting that he engaged in protected activity.  Thus, the Court respectfully recommends that the District Court deny as futile the proposed amendment insofar as it seeks to add a retaliation claim under Section 1981 on behalf of Taylor.

26

iv.    <u>Vaughn Burke</u>

Similarly, Momentum argues that the Proposed Complaint fails to allege that Burke engaged in protected activity, and thus the amendments including his retaliation claims under Section 1981 should be rejected.  (Def.'s Mem. at 27).  Tellingly, plaintiffs again do not defend this amendment in their Reply.

This Court therefore respectfully recommends that the District Court deny as futile the proposed amendment insofar as it seeks to add a retaliation claim under Section 1981 on behalf of Burke.

v.    <u>Andrae Brown</u>

Again, Momentum argues that the Proposed Complaint fails to allege that Brown engaged in protected activity, and thus the Second Amended Complaint should not be amended to include his Section 1981 retaliation claim.  (Def.'s Mem. at 27).  As with Taylor and Burke, plaintiffs fail to defend this proposed amendment.

This Court respectfully recommends that the District Court deny as futile the proposed amendment to the extent it seeks to add a retaliation claim under Section 1981 on behalf of Brown as well.

vi.    <u>Christopher Mercure</u>

Momentum argues that the Proposed Complaint fails to state a plausible claim of retaliation against Mercure under Section 1981 as there is no allegation that Mercure engaged in protected activity or any allegation of "temporal causation between any non-existent protected activity and his termination."  (Def.'s Mem. at 22).  Plaintiffs have not provided any support for this amendment, and the Court agrees with Momentum that nothing in the Proposed Complaint supports a plausible claim of retaliation under Section 1981 on behalf of Mercure.

This Court therefore respectfully recommends that the District Court deny the proposed amendment insofar as it seeks to add a retaliation claim under Section 1981 on behalf of Mercure.

### 2. 42 U.S.C. § 1981 Claims Summary

In summary, the Court finds that the plaintiffs' request to add discrimination and hostile work environment claims under Section 1981 on behalf of all the Proposed Plaintiffs would not be futile. With respect to the retaliation claims brought under Section 1981 on behalf of Perry, Senior, Zapata, Dominguez, Badiau, and Benjamin, the Court finds that their claims would not be futile. The Court also finds that Fowler's claims are not futile, although Momentum does not specifically challenge them. However, given the absence of certain elements in the proposed pleadings in support of retaliation claims brought on behalf of Taylor, Burke, Brown and Mercure, the Court finds that their claims would be futile.

### 3. NYSHRL and NYCHRL Claims

The Proposed Plaintiffs claim in their Third Cause of Action that Momentum "discriminated against" the Proposed Plaintiffs "on the basis of race and/or color in violation of the NYSHRL by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or remedy a hostile work environment and disparate treatment, including with respect to pay and other terms and conditions of employment, based on race and/or color." (Compl. ¶ 377). The Proposed Plaintiffs allege that the individual defendants "aided and abetted the discriminatory conduct." (Id. ¶ 378).

In the Fourth Cause of Action, the Proposed Plaintiffs claim that "Momentum has retaliated against the New York Plaintiffs and the Proposed Discrimination/Retaliation Class for engaging in protected activity, including, *inter alia*, by terminating their employment[,]" and that

the individual defendants aided and abetted this retaliatory conduct in violation of the NYSHRL. (Id. ¶¶ 381-82). The Proposed Plaintiffs raise nearly identical claims of hostile work environment and retaliation under the NYCHRL in the fifth and sixth causes of action respectively.  (Id. ¶¶ 384-391).

Discrimination, hostile work environment, and retaliation claims raised under the NYHRL "are analyzed according to the same standard" as claims raised under 42 U.S.C. § 1981. Kim v. County of Nassau, No. 19 CV 3264, 2020 WL 6149712, at *11 n.3 (E.D.N.Y. Oct. 2, 2020), report and recommendation adopted, No. 19 CV 3264, 2020 WL 6146881 (E.D.N.Y. Oct. 20, 2020); James v. American Airlines, Inc., 247 F. Supp. 3d 297, 307 (E.D.N.Y. 2017); Bermudez v. City of New York, 783 F. Supp. 2d 560, 587 (S.D.N.Y. 2011).  However, "courts must analyze NYCHRL claims separately and independently from any" other "federal and state law claims."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (noting that, in amending the NYCHRL, the New York City Council explicitly noted that the NYCHRL had been previously "construed too narrowly" and thus that it should be "construed independently from similar or identical provisions of New York State or federal statutes").

Under the NYCHRL, there is no requirement that a plaintiff asserting a hostile work environment claim must demonstrate conduct that was "severe or pervasive."  Sotomayor v. City of New York, 862 F. Supp. 2d 226, 261 (E.D.N.Y. 2012), aff'd, 713 F.3d 163 (2d Cir. 2013); Russo v. New York Presbyterian Hosp., 972 F. Supp. 2d 429, 450 (E.D.N.Y. 2013).  Thus, while the elements of a claim under the NYCHRL are otherwise the same as those claims raised under the NYSHRL and Section 1981, the extent and severity of the discriminatory conduct necessary for a plaintiff to make out a claim under the NYCHRL is less.  Id.  Similarly, the "essential

elements" of retaliation under the NYCHRL are identical to those under Section 1981, including that the plaintiff must engage in protected activity, except that "the employer's conduct need not be as severe to trigger liability." Sotomayor v. City of New York, 862 F. Supp. 2d at 262. Given that the Proposed Plaintiffs have either met the more rigorous requirements of Section 1981 or failed to meet the requirements under the NYSHRL and NYCHRL for the same reasons as they failed under Section 1981, the Court concludes that plaintiffs' proposed amendments— with the exception of the retaliation claims brought under the NYSHRL and NYCHRL on behalf of Taylor, Burke, Brown, and Mercure—are not futile.

### 4.  Title VII Claims

Although the Proposed Complaint includes discrimination and retaliation claims under Title VII, Momentum has not argued futility with respect to these claims.  Regardless, "claims brought pursuant Section 1981 are analyzed under the same standards as Title VII claims." Gad-Tadros v. Bessemer Venture Partners, 326 F. Supp. 2d 417, 424 (E.D.N.Y. 2004) (citing Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 75 (2d Cir. 2000); Phillip v. Univ. of Rochester, 316 F.3d 291, 299 (2d Cir. 2003)); see also Lamarr-Arruz v. CVS Pharmacy, Inc., 271 F. Supp. 3d 646, 655 n.6 (S.D.N.Y. 2017); Taitt v. Chemical Bank, 849 F.2d at 777.  Thus, for the same reasons articulated above, the Court, upon review of each of these claims, finds that the Proposed Plaintiffs' claims under Title VII would not be futile, with the exception of the retaliation claims asserted on behalf of Taylor, Burke, Brown, and Mercure.

### 5.  The Arbitration Agreement

Momentum argues that Benjamin, Senior, and Zapata's claims are precluded by the arbitration agreements that they signed, and thus, the amendments adding them as plaintiffs to the Second Amended Complaint are futile.  (Def.'s Mem. at 4).  In the alternative, Momentum

argues that the Court should stay the case pending the outcome of arbitration, or, if plaintiffs' motion is granted, Momentum should be allowed to file a motion to dismiss Benjamin, Senior, and Zapata's claims.  (Id. at 13-14 (citing 9 U.S.C. § 3)).

Plaintiffs argue in reply that "whether the [P]roposed [P]laintiffs' claims are ultimately subject to arbitration is not an appropriate issue to adjudicate at the motion to amend stage because, under the Rule 12(b)(6) futility analysis, a court is limited to what is set forth in the complaint."  (Pls.' Reply at 1 (citing Seemann v. Coastal Env't Grp., Inc., 219 F. Supp. 3d 362, 367 (E.D.N.Y. 2016)).  Plaintiffs observe that the court in Ranginwala v. Citibank, N.A., faced this exact issue and refused to deny the plaintiff's motion to amend.  (Id. at 2 (citing Ranginwala v. Citibank, N.A., No. 18 CV 14896, 2020 WL 525852 (D.N.J. Feb. 3, 2020)).  The court held that:

> While Defendant may be correct in its assertions regarding the arbitrability and viability of Plaintiff's proposed claims, it appears to the Court that a ruling on Defendant's futility arguments in the context of the present motion would require legal determinations better suited for a motion to compel arbitration or motion to dismiss.

(Id. (quoting Ranginwala v. Citibank, N.A., 2020 WL 525852 at *2)).  Thus, according to plaintiffs, they "should be permitted to amend their pleadings and any arguments related to the . . . arbitration agreements should be made in the context of a post-amendment motion to compel arbitration."  (Id.)

Plaintiffs also contend that the arbitration agreements at issue are voidable and unenforceable.  (Id. at 2-5).  According to plaintiffs, "there is no question that Momentum engaged in deceptive or coercive communications in connection with the issuance of its arbitration agreement."  (Id. at 9).  This action was originally filed on May 6, 2019.  According to plaintiffs, Momentum began presenting the arbitration agreement to its employees "on or

about June 25, 2019[,]" a "mere" seven weeks after the action commenced.  (Id.)  Plaintiffs

observe that "[c]ourts in the Second Circuit have held that arbitration agreements introduced

shortly after the filing of a class action suggests bad faith."  (Pls.' Mem. at 7 (citing Chen-Oster

v. Goldman, Sachs & Co., 449 F. Supp. 3d 216, 250 (S.D.N.Y. 2020))).

In addition, Momentum conditioned its employees' continued employment on their

signing the arbitration agreement.  (Id.)  Plaintiffs note that the Proposed Plaintiffs who signed

the arbitration agreement have only attained low levels of education, and "are particularly

vulnerable and susceptible to coercive conduct."  (Id.)  Citing Salazar v. Driver Provider Phoenix

LLC, plaintiffs assert that "an arbitration agreement that is a *condition* of one's employment and

unilaterally imposed is coercive."  (Id. at 8 (citing No. 19 CV 5760, 2021 WL 1248445, at *3-4

(D. Ariz. Apr. 5, 2021) (emphasis in the original)).

In response to plaintiffs' arguments regarding the unenforceability of the arbitration

agreements, Momentum disputes plaintiffs' position that "there exists a blanket rule prohibiting

enforcement of arbitration agreements entered into with putative class members, or with future

proposed plaintiffs, after the onset of litigation," and urges the Court to reject this argument.

(Def.'s Sur-Reply[5] at 3-4).

Whether the arbitration provisions are or are not enforceable is not an issue before this

Court at this time.  As plaintiffs note, federal courts in other jurisdictions have held that, when

deciding motions to amend complaints, it is premature to rule on the enforceability of contested

arbitration agreements.  See, e.g., Venson v. Pro Custom Solar, LLC, No. 19 CV 19227, 2021

WL 4963294, at *6 (D.N.J. Oct. 25, 2021) (holding that, "because [p]laintiff has challenged the

---

[5] Citations to "Def.'s Sur-Reply" refer to Momentum's Memorandum of Law in Sur-Reply in Opposition to Plaintiffs' Motion for Leave to Amend Complaint, filed on November 15, 2021, ECF No. 244.  Momentum has failed to include page numbers in its sur-reply, and therefore the Court's pin citations refer to the Bates numbers applied by the Court after the document was filed.

validity of the arbitration agreements at issue," the court would not rule on whether the plaintiffs' claims were subject to arbitration when deciding their motion to amend the complaint); Ranginwala v. Citibank, N.A., 2020 WL 525852, at *2 (same);  Huertas v. Foulke Mgmt. Corp., No. 17 CV 1891, 2018 WL 3831333, at *3 (D.N.J. Aug. 13, 2018) (same).  The approach adopted by these courts makes good sense in this case.

As noted, shortly after the original class action Complaint was filed on May 6, 2019, Momentum began conditioning employment on the employees' agreement to enter into an arbitration agreement.  The agreement signed by the employees explicitly stated that, "[i]n exchange for [y]our agreement" to arbitrate claims, "the Company . . . agrees to . . . employ or continue to employ [y]ou, although this Agreement does not alter [y]our at-will employment status." (Arbitration Agreement[6] at 1).  At the time that the Chief Executive Officer of Momentum signed the Arbitration Agreement on June 25, 2019, the lawsuit had been pending for approximately seven weeks, and Benjamin, Senior, and Zapata were clearly putative class members when they executed the Agreement in order to obtain or maintain employment with Momentum.

There is no indication either in the Arbitration Agreement or the record before this Court on this motion as to what, if anything, Momentum explained to these employees about the Arbitration Agreement or whether they were told that they would forfeit their right to participate in this action if they signed the Agreement.  Clearly, the factual circumstances surrounding the employees' agreement to these terms and what they were told about the impact of this arbitration provision may require discovery in order for the parties and the Court to fully analyze the enforceability of these Arbitration Agreements.  Since these issues have not been fully explored

---

[6] Citation to "Arbitration Agreement" refer to the copy of the arbitration agreement attached to Rahman Decl. as Exhibit C.

in the motion currently before this Court, the Court finds that a decision as to the enforceability of the agreement to arbitrate would be premature.  Until the issue of the enforceability of these agreements is decided, the claims to be added on behalf of Benjamin, Senior, and Zapata cannot be found to be futile.[7]

Moreover, where courts in this jurisdiction have held that proposed amendments were futile because of an agreement to submit to arbitration, the courts have already determined that the arbitration agreements at issue were enforceable.  See, e.g., Catz v. Precision Glob. Consulting, No. 19 CV 7499, 2021 WL 1600097, at *14 (S.D.N.Y. Apr. 23, 2021) (granting defendant's motion to compel arbitration and thus denying the motion to amend); Kutluca v. PQ New York Inc., 266 F. Supp. 3d 691, 704–05 (S.D.N.Y. 2017) (same); Oguejiofo v. Open Text Corp., No. 09 CV 1278, 2010 WL 1904022, at *3 (S.D.N.Y. May 10, 2010) (granting defendant's motion to compel arbitration as to one plaintiff, but finding that the contested arbitration agreement "did not on its face" apply to a second plaintiff, and thus the plaintiffs' motion to amend should be granted as to that plaintiff).

Given that plaintiffs have raised a plausible argument that the Arbitration Agreements at issue may be unenforceable, the proposed amendments to the Second Amended Complaint adding Benjamin, Senior, and Zapata are not futile.  This Court notes that this finding is without prejudice to allow defendants to move to compel arbitration as to these three Proposed Plaintiffs' claims at a later date.

---

[7] Plaintiffs further observe that Momentum's actions in requiring putative class members to sign the Arbitration Agreement as a condition of keeping their employment plausibly ran afoul of this Court's authority to regulate defendants' communications with those individuals.  See, e.g., OConner v. Agilant Sols., Inc., 444 F. Supp. 3d 593, 606 (S.D.N.Y. 2020) (finding an arbitration agreement unenforceable for this reason under similar circumstances); In re Currency Conversion Fee Antitrust Litig., 361 F. Supp. 2d 237, 251-52 (S.D.N.Y. 2005) (same).

B.  Prejudice

In addition to arguing that the proposed amendments would be futile as to specific Proposed Plaintiffs, Momentum argues that granting plaintiffs' motion to amend would prejudice the defense, and thus it should be denied in its entirety.  For the purposes of determining whether leave to amend should be denied due to prejudice to the nonmoving party, courts consider whether the amendment seeks to add a new claim derived from a different set of facts of which the original complaint did not provide adequate notice, see Chapman v. YMCA of Greater Buffalo, 161 F.R.D. 21, 24 (W.D.N.Y. 1995) (citing Ansam Assoc., Inc. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985)), whether the amendment would "significantly delay the resolution of the dispute," or whether the amendment or defenses would "require the opponent to expend significant additional resources to conduct discovery and prepare for trial."  Block v. First Blood Assocs., 988 F.2d at 350; accord Monahan v. N.Y. City Dep't of Corrections, 214 F.3d 275, 284 (2d Cir. 2000).  "The party opposing the motion to amend carries the burden to establish that one or more of the above factors would cause it substantial prejudice thus necessitating denial of the motion."  Rodriguez v. Ridge Pizza Inc., No. 16 CV 00254, 2018 WL 1335358, at *4 (E.D.N.Y. Mar. 15, 2018).

Momentum argues that plaintiffs have failed to provide a reason why the Proposed Plaintiffs were not originally joined in the action.  (Def.'s Mem. at 28).  Momentum suggests that plaintiffs' counsel used recently released contact information produced pursuant to the FLSA conditional certification to solicit the Proposed Plaintiffs.  (Id.)  According to Momentum, "[u]nder such circumstances, no other inference can be drawn other than to conclude that the instant motion to amend the complaint . . .  is being done with dilatory motive to prejudice the defendant[s]."  (Id.)

Plaintiffs argue in reply that Momentum's accusations are baseless, and that Momentum has not shown that the Proposed Plaintiffs delayed in joining the suit. (Pls.' Reply at 20). Moreover, Momentum has failed to indicate any specific prejudice that the defendants have suffered warranting denial of plaintiffs' motion. (Id. at 20-21 (citing EEOC v. Thomas Dodge Corp., 524 F. Supp. 2d 227, 231 (E.D.N.Y.2007); Rodriguez v. Ridge Pizza Inc., 2018 WL 1335358, at *11; Fariello v. Campbell, 860 F. Supp. 54, 70 (E.D.N.Y.1994)).

This Court agrees with plaintiffs: Momentum has failed to indicate any specific prejudice that it would suffer if the Proposed Plaintiffs were allowed to file the Proposed Complaint. The factual allegations contained in the Proposed Complaint are derived from the same operative facts and course of conduct and do not differ substantially from the allegations of discrimination, hostile work environment, retaliation, or under compensation contained in the Second Amended Complaint. Thus, it is not only appropriate but efficient to resolve the Proposed Plaintiffs' claims along with those of the original plaintiffs. Accordingly, the Court finds no prejudice to defendants in allowing the amendments and respectfully recommends that, with the exception of the retaliation claims described above, plaintiffs' motion to amend be granted.

<u>CONCLUSION</u>

This Court respectfully recommends that plaintiffs' motion to amend the Second Amended Complaint and file a Third Amended Complaint be granted in part and denied in part as articulated above. The proposed amendments should be allowed except for the amendments seeking to add retaliation claims on behalf of Taylor, Burke, Brown, and Mercure under 42 U.S.C. § 1981, Title VII, the NYSHRL, and the NYCHRL.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court within fourteen (14) days.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); <u>see also</u> Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  <u>See, e.g.</u>, <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       January 6, 2022

                                                    /s/ Cheryl L. Pollak
                                                    Cheryl L. Pollak
                                                    Chief United States Magistrate Judge
                                                    Eastern District of New York