UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
GARRETH MURRELL, *et al.*,

                    Plaintiffs,

          -against-

PRO CUSTOM SOLAR LLC, *et al.*,

                  Defendants.
--------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
19 CV 2656 (KAM) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On May 6, 2019, plaintiffs Garreth Murrell, Tevin Brown, Kenneth Sapp, Raoul Gerdes, Chevon Riley, and Shaddon Beswick (the "New York plaintiffs") filed suit against defendants Pro Custom Solar LLC, d/b/a Momentum Solar ("Momentum"), Jessica Adams, Rajan Silberman, and Adam Murawski, in their individual and professional capacities (collectively with Momentum, "defendants"), alleging wage and hour violations under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") on behalf of themselves and a putative collective class of similarly situated New York-based Field Installation Department employees (the "New York Subclass").[1]  (ECF No. 1).  On September 20, 2019, plaintiffs amended the complaint to add plaintiff Joseph Ashby; he joins in plaintiffs' collective FLSA claims and also alleges violations of the New Jersey Wage and Hour Law ("NJWHL") on behalf of himself and all other similarly situated New Jersey-based Field Installation Department employees (the "New Jersey Subclass").  (ECF No. 25).[2]

---

[1] The Complaint also included claims of discrimination on the basis of race and retaliation, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  (ECF No. 1).
[2] Plaintiff Ashby did not allege claims of race discrimination or retaliation.  (ECF No. 25).

On February 2, 2022, plaintiffs filed a Third Amended Complaint adding eleven new named plaintiffs.  (ECF No. 256).  Currently, there are 18 named plaintiffs:[3]  Murrell, Brown, Sapp, Gerdes, Riley, Beswick, Ashby, Maurice Perry, Antwan Senior, Pablo Dominguez, Luis Taylor, Vaughn Burke, Andrae Brown, Antonio Zapata, Kevin Fowler, Morens Badiau, Giovanni Benjamin, and Christopher Mercure (collectively, "Named plaintiffs").

Currently before the Court is plaintiffs' August 8, 2022 motion seeking (1) class certification under Federal Rule of Civil Procedure 23 for all members of the New York Subclass and the New Jersey Subclass, together known as the Rule 23 Wage Class; (2) final certification of the FLSA collective class ("FLSA Collective"); (3) appointment of plaintiffs Murrell and Ashby as class representatives; and (4) appointment of Wigdor LLP as class counsel.  (ECF No. 268).  For the reasons stated below, this Court respectfully recommends that plaintiffs' motion be denied without prejudice to renew.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs allege that Momentum is a New Jersey limited liability clean energy company that conducts business in New Jersey and New York.  (Compl.[4] ¶¶ 1, 47).  According to the Third Amended Complaint, Momentum is "one of the nation's most successful and fastest growing clean energy companies, . . . aspires to become a publicly traded company[,]" and "was recently ranked as the '#2' energy company in the nation."  (Id. ¶¶ 1–2).  Momentum's principal place of business for its New York operations is located at 45 Fairchild Avenue, Suite B, Plainview, NY 11803, and its current principal place of business for its New Jersey operations is located at 3096 Hamilton Boulevard, South Plainfield, NJ 07050.  (Id. ¶ 47).

---

[3] The Third Amended Complaint also contains factual allegations related to Daniel Papalia, an opt-in to the FLSA Collective.  (Compl. ¶¶ 151–52).

[4] Citations to "Compl." refer to plaintiffs' Third Amended Class Action Complaint, filed with the Court on February 2, 2022.  (ECF No. 256).

When the Original Complaint was filed on May 6, 2019, there were six named plaintiffs who brought the action on behalf of a putative wage and hour class and FLSA Collective comprised of Field Installation Department employees who were employed primarily as installers, electricians, roof leads and foremen, and who regularly worked out of Momentum's New York warehouse.  (Original Compl., ECF No. 1, ¶¶ 163, 195).  The Original Complaint in part sought to recover unpaid regular wages, unpaid overtime pay, and reimbursement for the tools that the employees were required to purchase in order to perform their jobs, pursuant to the FLSA and NYLL.  (Id. ¶¶ 227–44).  On September 20, 2019, plaintiffs filed an Amended Complaint, adding plaintiff Joseph Ashby in order to expand the scope of the wage and hour putative class and the FLSA Collective to include Field Installation Department employees who worked out of the defendants' New Jersey warehouse and to add claims under the NJWHL. (ECF No. 25).

On September 18, 2020, this Court granted plaintiffs' motion for conditional certification pursuant to the FLSA.  (ECF No. 63).  Since then, more than 100 current and former employees have filed Consent to Join forms, opting into the action.  (Christensen Decl.[5] ¶ 4).  Including the Named plaintiffs, a total of 127 members of the FLSA Collective have opted in (Pls.' Mem.[6] at 4), with at least 89 of whom are from New Jersey and 31 from New York.  (Christensen Decl. ¶ 4).  In the current motion before this Court, plaintiffs seek class certification pursuant to Federal Rule of Civil Procedure 23 for the wage and hour claims brought under the NYLL and the

---

[5] Citations to "Christensen Decl." refer to the Declaration of Jeanne M. Christensen, dated June 15, 2022, submitted in support of plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 and the Fair Labor Standards Act, to Appoint Plaintiffs Murrell and Ashby as Class Representatives and to Appoint Wigdor LLP as Class Counsel.  (ECF No. 270).

[6] Citations to "Pl.'s Mem." refer to the Memorandum of Law in Support of Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 and the Fair Labor Standards Act, to Appoint Plaintiffs Murrell and Ashby as Class Representatives and to Appoint Wigdor LLP as Class Counsel, dated June 15, 2022.  (ECF No. 269).

NJWHL, and they seek final certification of the FLSA Collective for which conditional certification was previously granted.  (Id. at 2).

In moving to certify a Rule 23 Wage Class and in seeking final certification of the FLSA Collective, plaintiffs mainly complain about the following Momentum policies:  1) Momentum's lunch policy of automatically deducting a 30-minute, unpaid lunch break from each day that an employee worked more than six hours, regardless of whether the employee worked during that time, which caused employees to lose out on regular and overtime wages; 2) Momentum's alleged practice of manipulating employees' start and stop times, and adding "Unpaid Time off" or "Unpaid Time," which caused employees to lose out on regular and overtime wages; 3) Momentum's travel policy, which required employees to report to the warehouse before and after completing work at the jobsite and not compensating the employees for that travel time; and 4) Momentum's policy of not reimbursing Field Installation Department employees for their purchases of necessary equipment.  (Id. at 5–8).  Plaintiffs allege that as a result of these policies, Momentum violated the NYLL, the NJWHL, and the FLSA.  (Id. at 2).

Defendants oppose the motion to certify a Rule 23 Wage Class, arguing that plaintiffs' allegations that defendants failed to pay all regular and overtime wages owed and failed to reimburse the employees for tools lack the requirements of commonality and typicality required for certification under Rule 23(a).  (Defs.' Mem.[7] at 14–19).[8]  Furthermore, defendants contend that plaintiffs' motion also fails because plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3).  (Id. at 19–20).  Finally, defendants oppose final certification of plaintiffs'

---

[7] Citations to "Defs.' Mem." refer to defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 and the Fair Labor Standards Act, dated July 25, 2022.  (ECF No. 271).

[8] Although defendants focus their legal arguments on the lunch policy and the tools reimbursement policy, they have not conceded that plaintiffs' other complained-of policies suffice for class certification.  (See Defs.' Mem. at 7–8).

FLSA Collective Action, arguing that Momentum's policies are legal and plaintiffs have not provided any evidence to demonstrate that, if there were violations, these violations were the result of a common company policy or practice applied to plaintiffs and similarly situated employees.  (Id. at 20–21).

DISCUSSION

I.    Motion for Rule 23 Class Certification

A.  Standards for Certifying a Rule 23 Class

It is well established that plaintiffs have the burden to establish compliance with each of the requirements of Rule 23 by a preponderance of evidence.  See In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 117 (2d Cir. 2013).  The Supreme Court has instructed courts to undertake a "'rigorous analysis' in which it 'may be necessary for the court to probe behind the pleadings.'"  In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 29 (2d Cir. 2006) (quoting General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 160–61 (1982)), reh'g denied, 483 F.3d 70 (2d Cir. 2007).  This inquiry "may require the resolution of 'factual disputes relevant to each Rule 23 requirement' and a court may make findings with respect to 'whatever underlying facts are relevant to a particular Rule 23 requirement.'"  Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 155 (S.D.N.Y. 2008) (quoting In re Initial Pub. Offering Sec. Litig., 471 F.3d at 41).  In so doing, a court must consider all of the relevant evidence before it.  Id.

However, "in deciding certification, courts must still take a liberal rather than a restrictive approach in determining whether the plaintiff satisfies Rule 23's requirements and may exercise broad discretion when determining whether to certify a class."  Spread Enters., Inc. v. First Data Merch. Servs. Corp., 298 F.R.D. 54, 66 (E.D.N.Y. 2014); see also Lizondro-Garcia v. Kefi LLC, 300 F.R.D 169, 174 (S.D.N.Y. 2014) (explaining "[d]oubts concerning the

5

propriety of class certification should be resolved in favor of class certification"); Rodolico v. Unisys Corp., 199 F.R.D. 468, 472 (E.D.N.Y. 2001) (noting "[i]t is often proper to view the class action liberally at the early stages of the litigation since the class can always be modified or divided as issues are later refined for trials") (quoting Adames v. Mitsubishi Bank, Ltd., 133 F.R.D. 82, 88 (E.D.N.Y. 1989)).  Pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure, "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." Collier v. Montgomery Cty Hous. Auth., 192 F.R.D. 176, 181 (E.D. Pa. 2000).

> B.  Requirements of Rule 23(a)

Rule 23(a) provides:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if:  (1) the
> class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class; (3) the
> claims or defenses of the representative parties are typical of the
> claims or defenses of the class; and (4) the representative parties
> will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 201–02 (2d Cir. 2008).  In addition to these four requirements, courts have added an implied requirement – that the class be ascertainable through objective criteria.  See Jankowski v. Castaldi, No. 01 CV 164, 2006 WL 118973, at *5 (E.D.N.Y. Jan. 13, 2006) (citing In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 209 F.R.D. 323, 337 (S.D.N.Y. 2002)).

In addition to satisfying the prerequisites of Rule 23(a), plaintiffs also must satisfy one of the three subdivisions of Rule 23(b):  (1) that separate actions pose a risk of inconsistent adjudications or would substantially impair the ability of other individuals to protect their interests; (2) injunctive or declaratory relief is sought concerning the class as a whole; or (3) common questions of law or fact predominate over individual questions, and a class action is

superior to other methods for bringing suit.  Fed. R. Civ. P. 23(b); <u>see also</u> <u>Roach v. T.L. Cannon Corp.</u>, 778 F.3d 401, 405 (2d Cir. 2015); <u>Annunziato v. Collecto, Inc.</u>, 293 F.R.D. 329, 339 (E.D.N.Y. 2013); <u>see generally</u> <u>Amchem Prods., Inc. v. Windsor</u>, 521 U.S. 591, 614–19 (1997). In this case, plaintiffs bring this action under Rule 23(b)(3).

In reviewing the papers submitted in connection with this motion, the Court has identified several issues relating to plaintiffs' claims under the NJWHL and the NYLL that have not been addressed by the parties but that are critical to determining whether certification is appropriate.  These issues are outlined below.

### C.  New Jersey Causes of Action

While a class certification motion is not the proper vehicle to assess plaintiffs' claims as a matter of law,[9] a review of the underlying claims is essential to the Court's analysis of requirements under Rule 23(a) and 23(b).  As to Rule 23(a)(2)'s commonality requirement, courts examine whether there are unifying, common questions, which "lay at the 'core' of the cause of action alleged."  <u>Savino v. Computer Credit, Inc.</u>, 173 F.R.D. 346, 352 (E.D.N.Y. 1997) (citing <u>Halford v. Goodyear Tire & Rubber Co.</u>, 161 F.R.D. 13, 18 (W.D.N.Y. 1995)).  As to Rule 23(b)(3)'s predominance and superiority requirement, "a court examining predominance must assess (1) the 'elements of the claims and defenses to be litigated[,] . . . (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief' . . . [, and (3)] whether the common issues can profitably be tried on a class[-]wide basis, or whether

---

[9] <u>Cf.</u> <u>Tyson Foods, Inc. v. Bouaphakeo</u>, 577 U.S. 442, 457 (2016) (explaining "[w]hen, as here, 'the concern about the proposed class is not that it exhibits some fatal dissimilarity but, rather, a fatal similarity – [an alleged] failure of proof as to an element of the plaintiffs' cause of action – courts should engage that question as a matter of summary judgment, not class certification'") (quoting Richard A. Nagareda, <u>Class Certification in the Age of Aggregate Proof</u>, 84 N.Y.U L. Rev. 97, 107 (2009)).

they will be overwhelmed by individual issues." Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 138 (2d Cir. 2015) (quoting Joseph M. McLaughlin, McLaughlin on Class Actions § 5:23 (11th ed. 2014)). Courts focus on whether common questions related to liability predominate. Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 372–73 (S.D.N.Y. 2007) (explaining "when determining whether common issues predominate, courts focus on the liability issue . . . and if the liability issue is common to the class, common questions [predominate over individual ones]") (quoting Bolanos v. Norwegian Cruise Lines Ltd., 212 F.R.D. 144, 157–58 (S.D.N.Y. 2002)).

    1)   Unpaid Regular Wages

Plaintiffs' eleventh and thirteenth causes of action allege claims under the New Jersey Wage and Hour Law for failure to pay wages for all hours worked, and for resulting overtime pay violations. Central to plaintiffs' theory for these claims is Momentum's common policy of deducting a lunch break of 30 minutes from plaintiffs' hours, irrespective of whether plaintiffs actually worked during their lunch breaks.[10] In discussing the lunch policy, plaintiff Murrell explains:

> Momentum's policy and practice of automatically deducting 30-minute breaks from my compensable time caused me to not be paid any wages for 2.5 hours (or more if I worked more than five days that week) each week. As a result, I was therefore not paid all the overtime wages I was owed in weeks in which I worked close to or over 40 hours, which was almost every week.

---

[10] Similarly, plaintiffs complain about Momentum's travel policy, under which employees "were required to start and end their workdays from either a New York or New Jersey warehouse . . . [and] were unable to count travel to and from job sites as part of their daily hours worked." (Pls.' Mem. at 15). They also complain about Momentum's alleged practice of manipulating time records, in part by inserting line items of "Unpaid Time Off" or "Unpaid Time." (Id. at 7). Plaintiffs allege that as a result of these policies and practices, Momentum undercounted compensable time, resulting in nonpayment of regular wages and overtime pay. The Court has not addressed these policies separately but finds that the allegations raise the same questions as the lunch policy allegations discussed above – namely, whether the claims for unpaid regular wages were properly brought under the NJWHL. Neither party addressed these issues in their submissions.

(Murrell Decl.[11] ¶ 12).  This common policy, which was automatically applied across all employees, allegedly caused plaintiffs to lose out on regular wages as well as overtime wages owed.

Courts interpreting the NJWHL have uniformly held that overtime claims are cognizable under the NJWHL.  See, e.g., Rodriguez v. Canada Dry Bottling Company, L.P., No. 14 CV 6897, 2015 WL 5770502, at *3 (D.N.J. Sept. 30, 2015).  Here, plaintiffs allege that because the hours they worked during their lunch breaks were not included in calculating the number of hours they worked over 40 in a week, they were not paid all of the overtime pay owed.  This states a claim under the NJWHL.

However, it is unclear whether plaintiffs have properly brought their claims for unpaid regular wages under the NJWHL.  Plaintiffs rely on Section 12.56–5.1 of the New Jersey Administrative Code as the basis for the New Jersey Subclass's unpaid wages claim.  Section 12.56-5.1, which is a section of New Jersey's Wage and Hour Regulations effectuating the NJWHL,[12] provides:  "Employees entitled to the benefits of the act shall be paid for all hours worked."  Although plaintiffs invoke this implementing provision of the NJWHL, courts interpreting New Jersey law have held that unpaid wage claims – unlike unpaid overtime claims – are generally brought under the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1, et seq.  See Morales v. Aqua Pazza LLC, No. 20 CV 6690, 2022 WL 1718050, at *3– 5 (D.N.J. May 27, 2022) (differentiating between claims under the NJWHL for unpaid overtime

---

[11] Citations to "Murrell Decl." refer to the Declaration of Garreth Murrell, dated December 26, 2019, originally submitted in support of plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification Pursuant to the Fair Labor Standards Act and for Other Relief.  (ECF No. 270-1).

[12] The NJWHL empowers the Attorney General and the Commissioners of Human Services and Labor to "adopt rules and regulations . . . to carry out the purposes of this act."  N.J. Stat. Ann. § 34:11-56a38.  The purpose of the New Jersey Wage and Hour Regulations is to "establish rules to effectuate N.J.S.A. 34:11-56a et seq., the New Jersey State Wage and Hour Law (Act) to provide sanctions for noncompliance, and to protect established wage rates."  N.J. Admin. Code § 12:56-1.1(a).

and minimum wages and claims under the NJWPL for nonpayment of wages owed); Doe v. Bloomberg L.P., No. 19 CV 9471, 2021 WL 1578358, at *5 (D.N.J. Apr. 22, 2021) (explaining that the NJWPL pertains to wage deductions, whereas the NJWHL pertains to minimum and overtime wage rates); Rodriguez v. Canada Dry Bottling Co., L.P., 2015 WL 5770502, at *3 (explaining that "[g]enerally, claims for failure to pay overtime are brought under the NJWHL . . . whereas claims that wages have not been timely paid or that inappropriate deductions by the employer have been made . . . are brought under the provisions of the NJWPL") (quoting Mitchell v. C&S Wholesale Grocers, Inc., No. 10 CV 2354, 2010 WL 2735655, at *5 (D.N.J. July 8, 2010)).

In Derieux v. FedEx Ground Package Systems, Inc., the plaintiff originally brought an action under the NJWPL and the NJWHL for unpaid wages and unpaid overtime. No. 21 CV 13645, 2023 WL 349495, at *1 (D.N.J. Jan. 20, 2023). In opposing plaintiff's motion to expand the proposed class period to six years preceding the filing of the original complaint, defendants argued that plaintiff was trying to "'shoehorn an overtime claim' into the NJWPL in order to take advantage of the NJWPL's six-year statute of limitations."[13] Id. at *3. In analyzing the parties' arguments, the court agreed with defendants that plaintiff's overtime claim must be brought pursuant to the NJWHL. Id. at *4. The court, in its reasoning, clearly distinguished between claims "under the NJWPL for unpaid regular wages" and claims for overtime under the NJWHL. Id. at *4.

Unlike the plaintiff in Derieux, and despite the precedents cited supra, the plaintiffs in the instant action have alleged their claims for unpaid regular wages only under the NJWHL, and not under the NJWPL, which appears to be the appropriate provision for pursuing these claims.

---

[13] See infra Section I.D for a discussion of the issue of the statute of limitations under the NJWHL.

While the Court is not addressing the sufficiency of the pleadings under Rule 12(b)(6), the question as to the basis for asserting liability is relevant to evaluating Rule 23's requirements and determining the proper scope of the New Jersey Subclass, as addressed infra.

    2) Reimbursement for Tools

Plaintiffs also rely on the New Jersey Administrative Code as the basis for the New Jersey Subclass's "tools of the trade" claim.  They allege that defendants had a common policy not to reimburse Field Installation Department employees "for their purchase of the equipment and/or uniforms required to do their jobs."  (Compl. ¶ 349).  Section 12.56-17.1, which is also a regulation promulgated to effectuate the NJWHL, provides in relevant part:  "No deduction from the pay of employees for uniforms shall be permitted.  If the employee pays for uniforms in cash and the cash payment brings the employee below the minimum wage, the employer shall make up the difference for the minimum wage for that week."  N.J. Admin. Code § 12:56-17.1(e).

In opposing plaintiffs' claims under this provision, defendants note that there are no allegations in the Complaint that Momentum required its employees to pay for uniforms; the only allegations relate to a requirement that Field Installation Department employees purchase their own tools.  Since this Administrative Code section says nothing about tools, defendants take the position that this is not a viable claim upon which a class should be certified.  (Defs.' Mem. at 12).  Plaintiffs did not respond to this argument in their Reply, and the Court has not found any cases relying on this Administrative Code provision to mandate reimbursement for tools or equipment.  An example of a case in which this Code provision was used as the basis for recovery was Benavidez v. Plaza Mexico, Inc., where the claim was clearly for uniforms, and not tools:  "Plaintiffs purchased uniforms, which included an apron and bow-tie, and were not

reimbursed by Defendants or paid statutory maintenance amounts."  No. 09 CV 5076, No. 09 CV 6574, 2014 WL 1133446, at *4 (S.D.N.Y. Mar. 21, 2014).

However, at least one New Jersey court has authorized plaintiffs to seek reimbursement for the costs of necessary tools, but there the claim was brought under the NJWPL, which regulates deductions from an employee's wages.  See Rodriguez v. Canada Dry Bottling Co., L.P., 2015 WL 5770502, at *3–4; see also Mitchell v. C&S Wholesale Grocers, Inc., 2010 WL 2735655, at *5 (explaining "claims that wages have not been timely paid or that inappropriate deductions by the employer have been made, such as deductions for office expenses, are brought under the provisions of the [NJWPL]"); Bachrach v. Chase Inv. Servs. Corp., No. 06 CV 2785, 2007 WL 3244186, at *1–2 (D.N.J. Nov. 1, 2007) (explaining that "Plaintiffs allege that [defendant] illegally deducted money from their paychecks to pay for office expenses and to reimburse dissatisfied customers" and "[i]f these allegations are true, they are violations of New Jersey law, which prohibits withholding portions of employees' wages") (citing the NJWPL, N.J. Stat. Ann. § 34:11-4.4).  In Rodriguez v. Canada Dry Bottling Co., the court noted that the plaintiffs there had "mistakenly invoke[d] NJWHL instead of the New Jersey Wage Payment Law," in asserting their "tools of the trade" claim for "truck rentals, truck maintenance, truck gasoline, truck insurance, equipment rental fees, insurance for the Product, fees for display space of the Product in stores, charges for lost, damaged, or stolen product, discounts provided to customers by Canada Dry, and other expenses."  2015 WL 5770502, at *3.  The court dismissed plaintiffs' claims without prejudice so they could amend and bring their claims under the proper statute.  Id. at *4.

In this instance, because it is unclear whether plaintiffs have alleged a valid cause of action for reimbursement for unpaid wages and tools under the NJWHL or intended to bring

their claims under the NJWPL, the Court is unable to assess the Rule 23 elements of commonality and predominance, nor determine whether a class action is the superior vehicle to address the aggregate claims.  Without first clearly understanding the theory of liability under which the New Jersey plaintiffs seek reimbursement for unpaid wages and tools, the Court is unable to recommend certification of a Rule 23 Wage Class, consisting of a New Jersey Subclass.  Accordingly, the Court respectfully recommends that the parties be directed to provide relevant authority under New Jersey law and clarify their positions on the New Jersey causes of action alleged.

D.  The Scope of the New Jersey Class and the Statute of Limitations

The next issue that requires clarification is the proposed scope of the New Jersey Subclass.  The proposed Rule 23 Wage Class is defined by plaintiffs as:

> All Field Installation Department employees who worked for Momentum out of its New York or New Jersey warehouse and/or performed work in New York or New Jersey for Momentum during the full statutory period, including, but not limited to, Installers, Electricians, Roof Leads and Foremen.

(Pls.' Mem. at 9–10; see also Compl. ¶¶ 298, 337).  As noted, the Rule 23 Wage Class comprises two subclasses: the New York Subclass and the New Jersey Subclass.  (Pls.' Mem. at 2).  Under Rule 23(c), "a class may be divided into subclasses that are each treated as a class under this rule" "when appropriate."  Fed. R. Civ. P. 23(c)(5).  This standard is a discretionary one.  Callari v. Blackman Plumbing Supply, Inc., 153 F. Supp. 3d 590, 598 (E.D.N.Y. 2015).  Although the New York and New Jersey Subclasses assert the same basic claims, the two subclasses differ in certain ways.

Under the NYLL, the statute of limitations is six years for a wage and hour case.  N.Y. Lab. Law §§ 198(3), 663(3).  Plaintiffs seek to certify a "New York Subclass consist[ing] of

Field Installation Department employees of Momentum at any time from May 6, 2013 (six years prior to the filing of the [Original C]omplaint alleging violations of the NYLL) to date who worked in Momentum's New York warehouse."  (Pls.' Mem. at 5).

Plaintiffs similarly seek to certify a "New Jersey Subclass consist[ing] of Field Installation Department employees of Momentum at any time from September 20, 2013, (six years prior to the filing of the Amended Complaint alleging violations of the NJWHL) to date who worked in Momentum's New Jersey Warehouse."  (Id.)  However, during much of the period alleged in the Complaint, the statute of limitations under the NJWHL was only two years. N.J. Stat. Ann. § 34:11-56a25.1 (West Aug. 5, 2019); see also Derieux v. FedEx Ground Packaging Sys., Inc., 2023 WL 349495, at *4–5 (explaining that "[f]or claims accruing before August 6, 2019, the NJWHL provided a two-year statute of limitations" but allowing the class period for the NJWHL to be amended to six years while noting that defendants would have the opportunity to challenge timeliness at class certification).  Effective August 6, 2019, the statute of limitations provision of the NJWHL applicable to wage and hour claims was amended to extend the time frame to six years.  See Magee v. Francesca's Holding Corp., No. 17 CV 565, 2020 WL 2768679, at *1–3 (D.N.J. May 28, 2020) (explaining that the NJWHL was amended on August 6, 2019 to expand the statute of limitations from two to six years and that such amendment was to "take effect immediately").

Plaintiffs are seeking to certify a proposed New Jersey Subclass extending from September 20, 2013 to date.  It appears that in measuring the date from which the statute of limitations runs for the NJWHL claims, plaintiffs rely on the date the Amended Complaint was filed and Mr. Ashby, the first New Jersey plaintiff, was added.  Plaintiffs have not explained the basis on which they seek to recover for claims that accrued prior to May 6, 2017, which would

be two years from the date of the Original Complaint, or even to claims that accrued prior to September 20, 2017, two years from the date of the Amended Complaint.[14] In <u>DeSimone v. TIAA Bank, FSB</u>, the court reviewed New Jersey's decisional law, noting that while the highest Court had not yet spoken on the question of whether the NJWHL expansion of the statute of limitations should be given retroactive application, "all the District Court of New Jersey decisions to consider the issue have held that it does not." No. 20 CV 6492, 2021 WL 4198274, at *3 (S.D.N.Y. Sept. 14, 2021) (collecting cases). Thus, "the Court conclude[d] that the applicable statute of limitations for Plaintiffs' New Jersey claims is two years." <u>Id.</u>; <u>see also</u> <u>Magee v. Francesca's Holding Corp.</u>, 2020 WL 2768679, at *4 (holding that "New Jersey law does not support the retroactive application of the six-year statute of limitations to pending claims"); <u>but cf.</u>, <u>Lin v. Fada Grp. Inc.</u>, No. 20 CV 5942, 2021 WL 4963283, at *5 (D.N.J. Oct. 25, 2021) (explaining, without mention of the August 2019 amendment, that "claims brought under the NJWHL must be filed within six years of the date of accrual" so that where the action was initiated on May 15, 2020, any claim accruing prior to May 15, 2014 was time-barred).

Since a determination as to when the NJWHL[15] class period began to run would affect the class definition and the scope of the Notice to class members, and the parties did not address this issue in their motion papers, the Court respectfully recommends that certification be denied without prejudice to allow the parties to submit appropriate authority addressing the basis upon which the Court should approve a six-year class period and the basis for retroactive application

---

[14] Even if plaintiffs are relying on the date the Amended Complaint was filed, plaintiffs have not explained why their proposed class should extend to claims that accrued in 2013, when those claims were subject to a two-year statute of limitations at the time of accrual.

[15] The Court notes that if the failure to pay wages and the tools-of-the-trade claims had been brought under the NJWPL, then a six-year statute of limitations would likely apply. <u>See</u> <u>Derieux v. FedEx Ground Package Sys., Inc.</u>, 2023 WL 349495, at *3 (explaining that "[t]he NJWPL does not contain an explicit statute of limitations[,] [h]owever, courts in this District have held that a private cause of action under the NJPWL is subject to a six-year statute of limitations") (internal citation omitted) (citing cases).

of the amendment to the NJWHL.  Moreover, the parties should provide authority for using the date the Amended Complaint was filed, rather than the date of the filing of the Original Complaint.

      E.  <u>Numerosity</u>

Given the lack of clarity related to the NJWHL's class period and the scope of the class, a related issue that requires clarification is whether the New Jersey Subclass is sufficiently numerous to warrant certification, particularly if the subclass is limited to employees whose claims accrued two years prior to the filing of the Original Complaint or the Amended Complaint, whichever is determined to be appropriate.[16]  Under Rule 23(a), courts may only certify a class if the class is so numerous that joinder becomes impractical.  Fed. R. Civ. P. 23(a)(1).  The Second Circuit has held that the standard for presuming numerosity is 40 or more members.  <u>Consolidated Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995).

In this case, in response to the Court's Order for conditional certification of the FLSA Collective, defendants produced a list of 295 employees who worked out of the New Jersey warehouse and 112 employees who worked out of the Long Island warehouse for the three years prior to the filing of the Original Complaint.  (Pls.' Mem. at 10; Christensen Decl. ¶ 28).  Clearly, the 112 employees identified by defendants as having worked out of the Long Island warehouse for the three years prior to the filing of the Original Complaint satisfies the numerosity requirement for the New York Subclass.

However, because there is a question as to whether the New Jersey Subclass should span a two-year or six-year period, the Court has no basis on which to determine if the New Jersey

---

[16] "The same class certification requirements apply to the certification of subclasses:  'a court must assure itself that each subclass independently meets the requirements of Rule 23.'"  <u>Zikovic v. Laura Christy LLC</u>, 329 F.R.D. 61, 68 (S.D.N.Y. 2018) (quoting <u>Ramirez v. Riverbay Corp.</u>, 39 F. Supp. 3d 354, 362 (S.D.N.Y. 2014)).

Subclass is sufficiently numerous to warrant certification in the event that a two-year statute of limitations is found to apply.  Accordingly, in addition to addressing the issue of the class definition and the applicable statute of limitations, it is respectfully recommended that the parties address the issue of numerosity for the New Jersey Subclass.

F.  <u>The Class Period</u>

The Court also respectfully recommends that plaintiffs provide additional support for the proposed class periods based on when the particular challenged policies were in effect.  The record before the Court is unclear as to whether plaintiffs are alleging that all of these challenged policies were in effect throughout the entire six-year proposed class period or whether some of the policies were in effect for a shorter period of time.

In opposition to plaintiffs' motion for preliminary conditional certification of the FLSA collective, defendants submitted the Declarations of Michael Graziano, Senior Vice President of Finance & Accounting at Momentum, and James Valerioti, Senior Vice President of Field Operations at Momentum, who explained that the travel policy or "voluntary rideshare program" was in effect only from April 2016 to May 2018, and that the lunch break policy only began on May 8, 2017.  (Graziano Decl.[17] ¶¶ 1, 24, 30; Valerioti Decl.[18] ¶¶ 1, 18, 24).  Defendants submitted the signed "Voluntary Rideshare Policy" forms of six named plaintiffs, in which they acknowledged:  "Because my time waiting for rideshare, driving to the jobsite, and returning to Company warehouse from jobsite is not compensable time, I will not engage in any work or

---

[17] Citations to "Graziano Decl." refer to the Declaration of Michael Graziano, dated January 27, 2020, submitted in support of Defendant Pro Custom Solar LLC D/B/A Momentum Solar's Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification Pursuant to the Fair Labor Standards Act and For Other Relief.  (ECF No. 56-15).

[18] Citations to "Valerioti Decl." refer to the Declaration of James Valerioti, dated January 27, 2020, submitted in support of Defendant Pro Custom Solar LLC D/B/A Momentum Solar's Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Certification Pursuant to the Fair Labor Standards Act and For Other Relief.  (ECF No. 56-16).

17

work-related duties during this time."  (ECF Nos. 56-3, 56-4, 56-5, 56-6, 56-7, 56-8).

Defendants also submitted the signed "Field Lunch Break Policy" forms of six named plaintiffs.

Each form reads:  "Effective May 8, 2017, all field employees who work at least 6 consecutive

hours must take a mandatory 30-minute lunch break."[19]  (ECF Nos. 56-9, 56-10, 56-11, 56-12,

56-13, 56-14).  Nevertheless, plaintiffs have proposed a class extending back to 2013, whose

claims arising out of Momentum's lunch policy and other policies may not have been

implemented until 2016 or 2017.

      In addition, the parties appear to agree that Momentum changed the lunch policy for New

Jersey employees on or around June 11, 2018, mandating that they are now "required to

manually punch-out at the start of their 30-minute lunch break and punch-in at the end of their

lunch break rather than have the time auto-deducted."  (Graziano Decl. ¶ 33, Valerioti Decl. ¶

27).  Indeed, in their Reply Memorandum filed in connection with the motion for conditional

certification of the FLSA collective, plaintiffs acknowledged that Momentum had adjusted its

lunch policy for New Jersey employees by July 2018, but they contend that "[a]t best, this would

be an issue that concerns the typicality of Plaintiffs' claims."  (Pls.' Cond. Reply[20] at 3).  At the

time of their Reply Memorandum, plaintiffs indicated that the issue warranted further discovery

but argued that it should not pose a barrier to providing notice to the members of the Collective.

(Id. at 3–4).  Plaintiffs do not explicitly discuss this issue in any depth in connection with the

pending motion, except to explain that commonality exists for other of their wage and hour

violations and "[s]hould sub[]classes be required to address certain periods, such as in 2017 and

---

[19] The "Field Lunch Break Policy" form filed at ECF No. 56-14 has an indecipherable name and lacks a "Printed Name" field like the other forms.  It also appears to be signed inexplicably on May 10, 2016, which is close to a year before defendants claim the forms were implemented.

[20] Citations to "Pls.' Cond. Reply" refer to plaintiffs' Memorandum of Law in Further Support of Plaintiffs' Motion for Conditional Certification pursuant to the Fair Labor Standards Act and for Other Relief as Requested Herein, dated February 14, 2020.  (ECF No. 57).

2018 for particular wage and hour policies, the Court easily can create such sub[]classes." (Pls.' Reply[21] at 8–9).

District courts are "not bound by the class definition proposed in the complaint;" instead, courts are empowered under Rule 23 to carve out an appropriate subclass and even create subclasses. Lundquist v. Security Pacific Auto. Fin. Servs. Corp., 993 F.2d 11, 14 (2d Cir. 1993) (quoting Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993)). At the same time, however, courts are not obligated to create subclasses *sua sponte*. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 408 (1980). It remains a plaintiff's burden to demonstrate how subclasses may save its class from certification problems. Id. at 408. As the Second Circuit held in Lundquist v. Security Pacific Automotive Financial Services Corp., "the district court's refusal to shoulder what, in the final analysis, is plaintiff's burden cannot be regarded in this case as an abuse of discretion." 993 F.2d at 15.

Given the lack of clarity with respect to the relevant time frame in which plaintiffs claim certain Momentum policies were operational, the Court is reluctant to recommend certification of a Rule 23 Wage Class extending back six years for all of the claimed violations and declines to recommend that Notice be sent to all members of the Rule 23 Wage Class at this time. The burden remains on plaintiffs to define the proper class or propose subclasses. While the uncertainty relating to these policy dates was not an obstacle in conditionally certifying the FLSA Collective, now facing a larger class period with more members, further explanation is needed. These common policies appear to form the foundation of plaintiffs' theories of liability and of class and collective certification. If plaintiffs continue to propose a six-year class period,

---

[21] Citations to "Pls.' Reply" refer to plaintiffs' Reply Memorandum of Law in Further Support of Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23 and the Fair Labor Standards Act, to Appoint Plaintiffs Murrell and Ashby as Class Representatives and to Appoint Wigdor LLP as Class Counsel, dated August 8, 2022. (ECF No. 272).

plaintiffs must explain how the class satisfies the commonality requirement in light of these policy dates, or what common questions would unify proposed policy subclasses, and whether Proposed Class Representatives are typical if these policies did not span the proposed class period.  The Court thus respectfully recommends that there be further briefing on these issues before a recommendation on certification can be made.

G.  The New York Subclass

Although the Court has not identified any questions specific only to the New York Subclass, the Court respectfully recommends that a decision on certification be held in abeyance until the combined Rule 23 Class can be considered as a whole.  While the Court could proceed to evaluate the requirements of Rule 23 with respect to the New York Subclass alone, plaintiffs have analyzed Rule 23's requirements by reference to both the New Jersey and New York class members, collectively referring to both as the Rule 23 Wage Class.  Given plaintiffs' interconnected treatment of the two subclasses, and given the confusion outlined above around the timing of the policies and the six-year class period, the Court respectfully recommends that the assessment of the Rule 23 requirements relating to the New York Subclass be deferred until the issues outlined above are addressed.

II.     Motion for Final Certification of the FLSA Collective Action

On September 18, 2020, the court granted conditional certification of the FLSA Collective and authorized the sending of notice to potential members of the Collective.  (ECF No. 63).  As noted, over 100 individuals have joined the FLSA Collective and plaintiffs now seek final certification of the FLSA Collective.

In Scott v. Chipotle Mexican Grill, Inc., the Second Circuit described the two-step process of first conditionally certifying the collective action based on the "modest factual

showing" that plaintiffs are "victims of a common policy or plan that violated the law," and then, "with the benefit of additional factual development," the court determines "whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." 954 F.3d 502, 515 (2d Cir. 2020) (quoting Glatt v. Fox Searchlight Pictures, Inc., 811 F.3d 528, 540 (2d Cir. 2016)), cert. dismissed, 142 S. Ct. 639 (2021). Plaintiffs argue that the members of the FLSA Collective are similarly situated because they were all Field Installation Department employees subject to the same, common corporate policies, which were allegedly in violation of the FLSA. (Pls.' Mem. at 25). In support of their motion for final FLSA certification, plaintiffs have again submitted the same seven declarations of the plaintiffs named in the Amended Complaint, which were prepared in December 2019. (ECF No. 273-1). They have only provided updated declarations from Proposed Class Representatives Murrell and Ashby. (ECF No. 270-6, 270-10). In addition, plaintiffs have submitted the "punch locations" of Joseph Ashby[22] and timekeeping records that allegedly demonstrate the uniformity of the automatic lunch break deduction.[23] (E.g., ECF Nos. 270-1, 270-2, 270-3, 270-4, 270-5, 270-8). Other than these documents, plaintiffs have not provided any additional evidence or testimony developed during the course of discovery that supports their motion for final certification.

In opposing plaintiffs' motion for final certification of the FLSA Collective, defendants raise the same arguments raised in opposition to the Rule 23 Wage Class – namely, that plaintiffs cannot show any common policy or practice of Momentum that violated the law and so the

---

[22] Plaintiffs assert that these "punch locations" demonstrate that some of Momentum's records produced "fail to illustrate a single fact and are unusable for purposes of this litigation." (Christensen Decl. at 3 n.4).

[23] Plaintiffs have included the time records of Christopher Rauchut who does not appear to have had a lunch break assessed against him; plaintiffs have not explained the relevance of these records or how the Court should consider them in connection with plaintiffs' lunch policy claims. (ECF No. 270-7).

question of whether individual violations of Momentum's legal policies occurred would require highly individualized inquiries and "mini trials." (Defs.' Mem. at 21–22).

Although <u>Scott</u> makes clear that certification under the FLSA is less stringent than what is required under Rule 23, <u>Scott</u> also makes clear that the second step of the FLSA Collective certification process is conducted "with the benefit of additional factual development." <u>Scott v. Chipotle Mexican Grill, Inc.</u>, 954 F.3d at 515, 520 (quoting <u>Glatt v. Fox Searchlight Pictures, Inc.</u>, 811 F.3d at 540); <u>see also</u> <u>Alves v. Affiliated Care of Putnam, Inc.</u>, No. 16 CV 1593, 2022 WL 1002817, at *18 (S.D.N.Y. Mar. 30, 2022); <u>Desilva v. North Shore-Long Island Jewish Health Sys., Inc.</u>, 27 F. Supp. 3d 313, 319 (E.D.N.Y. 2014) (explaining "[n]ow at the second stage . . . the Court must apply *heightened scrutiny* in determining whether Plaintiffs are similarly situated for the purposes of the FLSA") (emphasis added). At the second step, courts are meant to evaluate the FLSA Collective "after the benefit of discovery." <u>Foster v. City of New York</u>, No. 14 CV 4142, No. 14 CV 9220, 2022 WL 1191810, at *5 (S.D.N.Y. Mar. 30, 2021) (explaining "[a]t the second step . . . 'the court reexamines the collective after the benefit of discovery and makes a final ruling on whether the collective is in fact similarly situated to the named plaintiffs'") (quoting <u>Vecchio v. Quest Diagnostics Inc.</u>, No. 16 CV 5165, 2020 WL 5604080, at *10 (S.D.N.Y. Sept. 18, 2020)); <u>see also</u> <u>Puglisi v. TD Bank, N.A.</u>, 998 F. Supp. 2d 95, 100 (E.D.N.Y. Feb. 25, 2014) (explaining "[a]t the second step, after discovery, 'a court examines the record and again makes a factual finding regarding the similarly situated requirement'") (quoting <u>Kalloo v. Unlimited Mech. Co. of NY, Inc.</u>, 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012)); <u>Damassia v. Duane Reade, Inc.</u>, 2006 WL 2853971, at *3 (also explaining "[a]fter discovery, courts typically engage in a 'second tier' of analysis to determine on a full

record - and under a more stringent standard - whether the additional plaintiffs are in fact similarly situated").

Plaintiffs here rely on substantially the same evidence they put before the Court when the Court preliminarily approved the FLSA Collective.  As plaintiffs point out in their Memorandum of Law, only two depositions in this case have been held and the deposition of Momentum's CEO was limited to the question of arbitration.  (Pls.' Mem. 22 & n.10).  The other deposition taken was that of named plaintiff Riley.  (ECF No. 271-2). [24]

Plaintiffs explain that "[d]efendants produced minimal records, despite discovery demands being issued in 2019.  In the absence of records, or in the event that it is determined that those produced are unreliable and inaccurate, class members and Named Plaintiffs may rely on their reasonable recollections."  (Pls.' Mem. at 29; see also id. at 15–16 (also discussing the lack of relevant documents produced by defendants)).

Even if defendants have wrongfully withheld relevant records showing work schedules, work locations, and policies, the Court has before it only a very few "reasonable recollections" or testimony that it did not have when it decided the preliminary certification motion.  Mr. Ashby's new declaration focuses solely on defendants' refusal to produce records for him, despite his using Momentum's required app to track hours; he has not provided any additional factual information about the claims.  (ECF No. 270-10).  Mr. Murrell's new declaration does include some new information about how the time-keeping app worked and includes his understanding that "all Field Installation employees were paid in the same manner that I was, and

---

[24] The Court notes that plaintiffs did not even provide the Court with Mr. Riley's deposition transcript; defendants provided it and the Court has reviewed it.  Mr. Riley's testimony with regard to the purchase of necessary tools without reimbursement and the automatic imposition of a lunch break seemed consistent with plaintiffs' characterization in their Memorandum of Law, although there was some discrepancy with Mr. Riley describing lunch both as paid and unpaid.

that all Field Installation employees were subject to the same wage-related policies and practices instituted by Momentum, including the time keeping practices."  (ECF No. 270-6 ¶ 11).

Given plaintiffs' reliance on essentially the same evidentiary support provided in connection with the initial motion for collective certification[25] and the absence of additional evidence obtained during discovery, the Court is hard-pressed to apply the "heightened scrutiny" required during the second stage of analyzing a motion for final FLSA certification.  Desilva v. North Shore-Long Island Jewish Health Sys., Inc., 27 F. Supp. 3d at 319.  The cases uniformly suggest that in this second phase, the court, "after the benefit of discovery" determines whether plaintiffs are similarly situated for the purposes of the FLSA.  Without further briefing from plaintiffs as to why this Court should reach the second step of FLSA certification with substantially the same information it had at the first step, the Court respectfully recommends that the motion for final certification be denied, without prejudice to renew upon further briefing or preferably after more discovery is conducted.

CONCLUSION

In summary, the Court respectfully recommends that the District Court deny the pending motion with leave to refile so the parties may brief the concerns raised in connection with the pending motion.

---

[25] The Court notes that the requirement of a two-stage analysis for certification suggests that reliance on substantially the same evidence presented in the initial phase of review is not sufficient during the second phase; otherwise, there would be no need for a second review.  It appears that, pursuant to an order of the district court, the parties have been engaged in expedited discovery relating to the execution of certain contested arbitration agreements.  (See Order, dated Mar. 7, 2022).  While this does not fully explain why the parties have not been engaged in other discovery relating to the issues of certification or the underlying merits, nor does it explain why there are virtually no additional updated declarations from the Named plaintiffs or the many opt-ins, plaintiffs explain that further "discovery using the advantages that the class device was designed to accomplish," can be conducted, depositions can be taken, and questions can be asked to validate the uniformity of claims.  (Pls.' Reply at 10).  Given that there has been so little additional discovery conducted on the issues presented in this motion, the Court declines to recommend final certification of the Collective.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
February 2, 2023

_____
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York