**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

GARRETH MURRELL, TEVIN BROWN,   :
KENNETH SAPP, RAOUL GERDES, CHEVON   :    Civil Action No.:
RILEY, SHADDON BESWICK, JOSEPH ASHBY,   :    19 Civ. 02656 (KAM)(PCG)
MAURICE PERRY, ANTWAN SENIOR, PABLO   :
DOMINGUEZ, LUIS TAYLOR, VAUGHN   :
BURKE, ANDRAE BROWN, ANTONIO   :
ZAPATA, KEVIN FOWLER, MORENS BADIAU,   :
GIOVANNI BENJAMIN, and CHRISTOPHER   :
MERCURE on behalf of themselves and all   :
similarly-situated employees,   :
  :
                   Plaintiffs,   :
  :
       v.   :
  :
PRO CUSTOM SOLAR LLC d/b/a MOMENTUM   :
SOLAR, JESSICA ADAMS, RAJAN   :
SILBERMAN and ADAM MURAWSKI, in their   :
individual and professional capacities,   :
  :
                   Defendants.   :
------------------------------------------------------------------X

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF FLSA COLLECTIVE SETTLEMENT

**WIGDOR LLP**

Jeanne M. Christensen
Noah Jacobs

85 Fifth Avenue
New York, NY 10003
Tel. (212) 257-6800
Fax. (212) 257-6845
jchristensen@wigdorlaw.com
njacobs@wigdorlaw.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

BACKGROUND ........................................................................................................... 1

I.    THE TERMS OF THE PROPOSED SETTLEMENT AGREEMENT ............................ 2

      A.    Settlement Consideration ................................................................... 2

      B.    Attorneys' Fees and Litigation Costs .................................................. 2

      C.    Service Awards .................................................................................... 3

      D.    Settlement Allocation Formula ........................................................... 3

      E.    Settlement Claims Administrator ........................................................ 4

      F.    Eligible Employees ............................................................................. 4

      G.    Release of Claims ............................................................................... 5

      H.    Notice Procedure to Opt-In Plaintiffs ................................................ 6

LEGAL STANDARD ..................................................................................................... 6

I.    CHEEKS ANALYSIS ............................................................................................ 6

      A.    The Settlement is the Product of Extensive, Arm's-Length Negotiations .............. 6

      B.    The Value of the Settlement is Fair When Balanced Against the Potential
            Recovery, Discounted for the Inherent Risks of Litigation, Likelihood of
            Success and Nature of the Issues and Law ........................................... 8

      C.    Settlement Avoids Complex, Costly and Lengthy Litigation(s), Fraught
            With Risk ............................................................................................ 9

      D.    The Named Plaintiffs and Opt-in Plaintiffs were Common Victims of an
            FLSA Violation ................................................................................. 11

II.   SERVICE AWARDS .......................................................................................... 12

III.  WIGDOR'S 33.3% FEES SHOULD BE APPROVED ............................................ 15

      A.    The Court Preliminarily Approved Wigdor as Class Counsel ............ 15

B.      The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases..................................................................17

C.      The "Reasonableness" Factors Articulated in *Goldberger* Support an Award of 33.3% of the Settlement Fund ...............................................18

      1.     Wigdor's Time and Labor.......................................................18

      2.     Magnitude and Complexity of the Litigation...........................20

      3.     Risk of Litigation ...................................................................21

      4.     Quality of Representation .......................................................22

D.      Fee in Relation to the Settlement .................................................22

      1.     Under an Optional Lodestar Cross-Check, the 33.3% Fee is Reasonable ..............................................................................23

E.      Public Policy Considerations .......................................................24

IV.    WIGDOR SHOULD BE REIMBURSED FOR LITIGATION EXPENSES...................25

CONCLUSION....................................................................................................25

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*,
   522 F.3d 182 (2d Cir. 2008) .................................................................................... 23

*Asare v. Change Grp. of New York, Inc.*,
   No. 12 Civ. 3371, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ............................. 16

*Beckman v. Keybank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. Apr. 23, 2013) ............................................................... 20

*Cagan v. Anchor Sav. Bank FSB*,
   1990 WL 73423 (E.D.N.Y. May 2, 1990) ................................................................. 8

*Cassese v. Williams*,
   503 F. App'x 55 (2d Cir. 2012) ........................................................................ 23, 18

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. Aug. 7, 2015) ................................................................ 1, 6, 7

*Chodkowski v. Cnty. of Nassau*,
   No. 16 Civ. 5770 (JMW), 2021 WL 3774187 (E.D.N.Y. Aug. 25, 2021) ......... 13, 14

*Cisneros v. Borenstein Caterers, Inc.*,
   No. 23 Civ. 1409, 2024 WL 5243504 (E.D.N.Y. Dec. 30, 2024) ...................... 10, 24

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) .................................................................................... 21

*Clark v. Ecolab, Inc.*,
   Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2009 WL 6615729
   (S.D.N.Y. Nov. 27, 2009) ..................................................................................... 7, 8

*Cortes v. New Creators, Inc.*,
   No. 15 Civ. 5680, 2016 WL 3455383 (S.D.N.Y. June 20, 2016) ........................... 10

*Deposit Guar. Nat'l Bank v. Roper*,
   445 U.S. 326 (1980) ........................................................................................ 17, 24

*Fisher v. SD Prot. Inc.*,
   948 F.3d 593 (2d Cir. 2020) ...................................................................................... 7

*Frank v. Eastman Kodak Co.*,
  228 F.R.D. 174 (W.D.N.Y. 2005) ........................................................ 8, 11, 14, 17

*Goldberger v. Integrated Res. Inc.*,
  09 F.3d 43, 51 (2d Cir. 2000) ........................................................ 17, 18, 20, 23

*Grace v. Ludwig*,
  484 F.2d 1262 (2d Cir. 1973) ........................................................ 24

*Hernandez v. Immortal Rise, Inc.*,
  306 F.R.D. 91 (E.D.N.Y. 2015) ........................................................ 8

*In re Austrian & German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000) ........................................................ 9

*In re Beacon Assocs. Litig.*,
  2013 WL 2450960 (S.D.N.Y. May 9, 2013) ........................................................ 18

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ........................................................ 25

*In re Elan Sec. Litig.*,
  385 F. Supp. 2d 363 (S.D.N.Y. 2005) ........................................................ 21

*In re Ira Haupt & Co.*,
  304 F. Supp. 917 (S.D.N.Y. 1969) ........................................................ 8

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999) ........................................................ 17

*Johnson v. Brennan*,
  No. 10 Civ. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ........................................................ 14, 20

*Kazadavenko v. Atlantic Adult Day Care Center, Inc.*,
  No. 21 Civ. 3284 (ENV), 2022 WL 2467541 (E.D.N.Y. Apr. 14, 2022) ........................................................ 23

*Khait v. Whirlpool Corp.*,
  No. 06–6381(ALC), 2010 WL 2025106 (E.D.N.Y. Jan.20, 2010) ........................................................ 20, 22

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998) ........................................................ 24

*Li Rong Gao v. Perfect Team Corp.*,
  249 F. Supp. 3d 636 (E.D.N.Y. 2017) ........................................................ 10

*Martin v. Sprint/united Management Company*,
   No. 15 Civ. 5237, 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) ................................................... 6

*Matheis v. NYPS, LLC*,
   No. 13 Civ. 6682, 2016 WL 519089 (S.D.N.Y. Feb. 4, 2016) .................................................. 6

*Matheson v. T-Bone Rest., LLC*,
   No. 09 Civ. 4214 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011) ............................... 14

*McDaniel v. County of Schenectady*,
   595 F.3d 411 (2d Cir. 2010) ......................................................................................... 17, 23

*McGlone v. Cont. Callers, Inc.*,
   49 F. Supp. 3d 364 (S.D.N.Y. 2014) ........................................................................... 11, 12

*Millea v. Metro-N. R. Co.*,
   658 F.3d 154 (2d Cir. 2011) ............................................................................................... 23

*Missouri v. Jenkins*,
   491 US 274 (1989) ............................................................................................................. 24

*Mobley v. Five Gems Mgmt. Corp.*,
   17 Civ. 9448, 2018 WL 1684343 (S.D.N.Y. Apr. 6, 2018) ................................................... 23

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542, (2010) .......................................................................................................... 23

*Perez-Ramos v. St. George Holding Corp.*,
   No. 18 Civ. 1929, 2020 WL 415818 (E.D.N.Y. Jan. 27, 2020) ............................................. 23

*Prasker v. Asia Five Eight, LLC*,
   No. 08 Civ. 5811 (MGC), 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010)................................... 24

*Raniere v. Citigroup, Inc.*,
   310 F.R.D. 211 (S.D.N.Y. 2015) .................................................................................. 16, 22

*Reyes v. Altamarea Grp., LLC*,
   No. 10 Civ. 6451 (RLE), 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011)................................ 15

*Rotthoff v. New York State Cath. Health Plan, Inc.*,
   No. 19 Civ. 4027, 2021 WL 1310220 (E.D.N.Y. Apr. 8, 2021) ............................................ 14

*Santiago v. Agadjani*,
   No. 21 Civ. 7090, 2024 WL 4480106 (E.D.N.Y. Oct. 11, 2024)....................................... 10, 23

*Sanz, et al. v. Johny Utah 51 LLC, et al.,* No. 14 Civ. 4380, Dkt. No. 120, (JMF)
(S.D.N.Y. Apr. 20, 2015) ................................................................................... 16

*Savoie v. Merchs. Bank*,
166 F.3d 456 (2d Cir. 1999) ............................................................................... 18

*Scott v. Chipotle Mexican Grill, Inc.*,
954 F.3d 502 (2d Cir. 2020) ........................................................................... 11, 12

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
258 F. Supp. 2d 254 (S.D.N.Y. 2003) ............................................................... 17

*Taft v. Ackermans*,
No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) .................... 22

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ........................................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ............................................................................ 6, 17

*Wolinsky v. Scholastic Inc.*,
900 F. Supp. 2d 332 (S.D.N.Y. 2012) ................................................................ 10

**Statutes**

29 U.S.C. § 216 ................................................................................................... 1
29 U.S.C. § 201 ................................................................................................... 5
42 U.S.C. § 1981 ................................................................................................. 1

Plaintiffs Garreth Murrell, Tevin Brown, Kenneth Sapp, Raoul Gerdes, Chevon Riley, Shaddon Beswick, Joseph Ashby, Maurice Perry, Antwan Senior, Pablo Dominguez, Luis Taylor, Vaughn Burke, Andrae Brown, Antonio Zapata, Kevin Fowler, Morens Badiau, Giovanni Benjamin and Christopher Mercure ("Named Plaintiffs"), on behalf of themselves and the individual opt-in "party plaintiffs" ("Opt-in Plaintiffs") who filed "Consent to Join" notices in this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), who they represent, and without opposition from Defendant Momentum Solar LLC (formerly Pro Custom Solar d/b/a Momentum Solar) ("Defendant" or "Momentum"), hereby move this Court pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015), for preliminary FLSA settlement approval.

## BACKGROUND

In May 2019, six Named Plaintiffs, Garreth Murrell, Tevin Brown, Shaddon Beswick, Chevon Riley, Kenneth Sapp and Raoul Gerdes, filed a federal court action in Brooklyn alleging claims of racial discrimination, harassment and unlawful retaliation under 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") against Momentum and three individual defendants (Jessica Adams, Rajan Silberman and Adam Murawski) on behalf of themselves and a putative class of Black Installers in New York (the "Action"). The Action also alleged potential class and collective wage and hour violations, including failure to pay for all hours worked and failure to pay overtime under the FLSA and New York law. In September 2019, the Action was amended to add Joseph Ashby as a named plaintiff and as a potential class representative for state law wage and hour claims on behalf of New Jersey-based Installers.

In September 2020, the Court granted Plaintiffs' motion for conditional certification of a collective action under the FLSA. ECF 63. Additional wage and hour plaintiffs proceeded to opt-in to the lawsuit and by March 10, 2025, the date of the mediation where it was resolved in principle, 102 opt-in plaintiffs had joined the 18 Named Plaintiffs in connection with federal wage-and-hour claims. The details of the proposed settlement and the reasons why it is fair and reasonable pursuant to *Cheeks* are explained below.

## I.     THE TERMS OF THE PROPOSED SETTLEMENT AGREEMENT

### A.     Settlement Consideration

Defendant has agreed to pay $630,000 into a settlement fund as part of the FLSA Settlement Agreement (the "Agreement"). Declaration of Jeanne M. Christensen ("Christensen Decl."), Ex. 1.[1] If approved, from the Settlement Fund: (i) all FLSA Collective members will receive their allocated share; (ii) Counsel will be compensated reasonable fees and reimbursed for expenses pending Court approval; (iii) The Named Plaintiffs will receive service awards ("Service Awards"); and (iv) the costs of administering the Settlement will be paid to the Claims Administrator. Thus, the entire Net Settlement Fund ("NSF") (net of those amounts approved for Counsel's attorneys' fees and costs, service payments and claims administration costs) will be distributed to the FLSA Collective.

### B.     Attorneys' Fees and Litigation Costs

Counsel applies for attorneys' fees of no more than one-third (33.3%) of the Settlement Fund, or $209,790, plus reasonable litigation expenses. As detailed below, this request is below what Counsel's lodestar fees are based on their rates and hours expended. As of May 12, 2025, the total costs incurred by Wigdor were $46,905.26. However, no more than fifty percent (50%)

---

[1]     Unless otherwise noted, all exhibits referenced are attached to the Christensen Declaration.

of the expenses are being allocated to the FLSA Collective as of May 12, 2025, that amount being $23,452.63. The remainder amount, likely more than $23,452.63 will be paid in the resolution of the Race Claims. Christensen Decl. ¶¶ 6, 57; Exhibit 5.

## C. Service Awards

The 18 Named Plaintiffs seek modest Service Awards[2] that total $44,000 in recognition of the services they rendered to the FLSA Collective, which include, *inter alia*: (i) coming forth and engaging Counsel to pursue their claims and the claims of the FLSA Collective; (ii) providing documents and information to Counsel; (iii) assisting in the preparation of pleadings; (iv) searching for relevant documents and responding to separate interrogatories from Defendant and from the Individual Defendants; (v) producing documents in response to separate requests from Defendant and from the Individual Defendants; (vi) preparing for and attending depositions in-person; (vii) meeting and communicating with Counsel at all phases during the litigation process, including the settlement negotiation process; (viii) attending mediations; (ix) undertaking the risk of retaliation by holding their names out in the caption of a publicly filed Complaint; (x) undertaking the risk of retaliation or other detrimental effects by coming forward in an action against a former employer; and (xi) undertaking the risk of being responsible for litigation costs and expenses in the event a favorable outcome did not result. Christensen Decl. ¶5, 56; Exhibit 4.

## D. Settlement Allocation Formula

The portion of the Settlement Fund payable to the FLSA Collective will be divided among the FLSA Collective according to the following allocation formula: the FLSA Collective Member's number of weeks worked at Momentum multiplied by his average hourly rate multiplied

---

[2]     Plaintiff Garreth Murrell, who first came forward and retained Wigdor LLP in November 2018, seeks an award of $4,000. The other five plaintiffs who commenced the action with Murrell, as well as Plaintiff Joseph Ashby, seek $3,000 each and the remaining Named Plaintiffs, all of whom participated in full discovery depositions and the activities set forth herein, seek $2,000 each. *See* Exhibit 4.

3

by 2.5 (which represents thirty-minute lunch breaks deducted from wages on a weekly basis). Exhibit 10 is a chart with the allocation formula applied to the FLSA Collective members, in order for the Court to assess the range of recovery. Each FLSA Collective Member will receive a *pro rata* share of the Net Settlement Fund based on his damages calculated using this formula. Christensen Decl. ¶11, 57; Exhibit 10.

### E.   Settlement Claims Administrator

The Parties have jointly selected Arden Claims Service LLC ("Arden Claims" or "the Claims Administrator") to serve as the Claims Administrator to administer the Settlement Fund. The Claims Administrator's fees in the amount of $22,000 shall be borne by the Settlement Fund. If the Court approves the FLSA Settlement, the responsibilities of handling the tasks necessary for paying the entire Collective Members will transfer to Arden Claims, such items including: (i) preparing, printing and collecting all W-4 and W-9 tax forms for all Members of the FLSA Collective and promptly furnishing to Defendant's Counsel; (ii) tracking and maintaining all written or electronic communications from Members of the FLSA Collective that the Settlement Claims Administrator receives; (iii) mailing the Settlement payments; (iv) preparing and mailing Counsel's attorneys' fees, expenses, costs and Service Awards in accordance with this Agreement and  Order of the Court; (v) responding to inquiries of  Counsel for Collective Members and Defendant's Counsel consistent with the Settlement Claims Administrator's duties specified herein; (vi) maintaining adequate records of its activities, returned mail and other communications and attempted written, electronic or telephone communications with Collective Members;  and (vii) such other tasks as the Parties mutually agree.   The Parties will have equal access to the Settlement Claims Administrator.

### F.   Eligible Employees

The FLSA Collective is defined as:

> All Field Installation Department employees who worked for Momentum out of its New York and New Jersey warehouses or performed work for Momentum in New York or New Jersey during the full statutory period, including, but not limited to, Installers, electricians, Roof Leads and foremen.

The Action was commenced on May 6, 2019, and thus the three-year potential statutory period under the FLSA extends back to May 6, 2016. To be clear, only opt-in forms submitted prior to the mediation session on March 10, 2025 are eligible.

### G. Release of Claims

The Settlement Agreement releases: Momentum Solar LLC, formerly known as Pro Custom Solar LLC d/b/a Momentum Solar, as well as their members, managers, owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them ("Releasees"), from all wage and hour claims that could have been asserted under federal laws or any state or municipal wage and hour laws by and on behalf of themselves or the Members of the Collective in the Litigation as of the date the Court issues an Order approving the Parties' settlement, including all claims under the FLSA, 29 U.S.C. §§ 201 *et seq.* for minimum wage, overtime, retaliation, and supporting federal regulations, interest on such claims, and attorneys' fees and costs related to such claims, all claims under New York State laws or New Jersey State laws for regular or overtime wages, spread of hours, or any other related wage and hour claims through the date this FLSA Settlement Agreement and Release is executed by all Parties. Ex. 1, ¶ 2.3(A).

### H. Notice Procedure to Opt-In Plaintiffs

Attached as Exhibit 9 to the Christensen Declaration is a proposed Notice of Preliminary FLSA Settlement Approval. The Notice proposes that it can be sent to the opt-in Plaintiffs via email. *See Martin v. Sprint/united Management Company*, No. 15 Civ. 5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) ("Courts in this Circuit routinely approve email distribution of notice and consent forms in FLSA cases"); ECF 63 at 42 (permitting Plaintiffs to send Notice of Lawsuit and proposed Consent to Sue forms via email). Arden will take reasonable steps to obtain the correct email address of any FLSA Collective member whose Notice is returned as undeliverable and shall attempt one skip trace re-mailing per person. As per the extensive communications with the opt-ins, we have confirmed through bounce backs that our communications with the opt-in group, including a communication on May 16, 2025 that notice was successfully delivered to at least one known email address of every opt-in plaintiff.

## LEGAL STANDARD

Any stipulated dismissal that settles FLSA claims with prejudice must be approved by the district court. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. Aug. 7, 2015). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Matheis v. NYPS, LLC*, No. 13 Civ. 6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016).

### I. *CHEEKS* ANALYSIS

#### A. The Settlement is the Product of Extensive, Arm's-Length Negotiations

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citation

omitted).  "In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (*citing Cheeks*, 796 F.3d at 206).  Here, the proposed settlement is procedurally fair because it was reached after the exchange of discovery documents, depositions and settlement negotiations that were at arm's-length between capable and experienced counsel, after counsel conducted a thorough investigation and evaluated the merits of the claims.  "In evaluating the settlement, the Court should keep in mind the unique ability of the class and defense counsel to assess the potential risks and rewards of litigation . . ." *Clark v. Ecolab, Inc.*, Nos. 07 Civ. 8623 (PAC), 04 Civ. 4488 (PAC), 06 Civ. 5672 (PAC), 2009 WL 6615729, at *3-4 (S.D.N.Y. Nov. 27, 2009) (settlement negotiations presided over by an "experienced class action employment mediator" "reinforces the non-collusive nature of the settlement").  Here, the Parties have engaged in litigation, negotiation and information/document exchange that have allowed them to thoroughly assess the challenges present in this action.  Discovery was completed and upcoming trial dates were scheduled.  Resolution was reached after mediation with Martin Scheinman, a highly skilled arbitrator and mediator with decades of experience, who specializes in employment disputes.  Indeed, as set forth in the Christensen Declaration, the Parties here engaged in multiple mediation attempts.

**B.** **The Value of the Settlement is Fair When Balanced Against the Potential Recovery, Discounted for the Inherent Risks of Litigation, Likelihood of Success and Nature of the Issues and Law**

The Settlement Amount of up to $630,000 represents a fair and highly favorable value to the FLSA Collective given the attendant risks of litigation, though recovery potentially could have been greater if Plaintiffs succeeded on all claims at trial, were awarded liquidated damages of 100% of their damages and survived an appeal. Determining whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (citation and quotations omitted). "Instead, 'there is a range of reasonableness with respect to a settlement range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair. *See, e.g.*, *Cagan v. Anchor Sav. Bank FSB*, 1990 WL 73423, at *12 (E.D.N.Y. May 2, 1990) (approving $2.3 million class settlement where "best possible recovery would be approximately $121 million"); *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) ("[W]hen a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor.") (internal citations and quotation marks omitted); *Clark v. Ecolab, Inc.*, No. 04 Civ. 4488 (PAC), 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) ("In evaluating the settlement, the Court should keep in mind the unique ability of the class and defense counsel to assess the potential risks and rewards of litigation . . ."). "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).

Here, Wigdor estimates that best-case scenario, if all Named Plaintiffs and Opt-in

Plaintiffs prevailed on their wage and hour violation claims for failure to pay straight time due to the automatically deducted lunch breaks of 30 minutes each day, that amount would be approximately $424,631. See Ex. 10; Christensen Decl., ¶¶57-59. The settlement of $630,000 is a fair value in light of this potential recovery. Even if a jury awarded them liquidated damages of 100% of their damages, and the verdict survived an appeal, that amount would be $849,262. *Id*. The settlement of $630,000 remains a fair value. The unpaid overtime claims, which hinge directly on proving liability of the 30-minute lunch deducted each day, would necessarily vary for each member of the FLSA Collective, who would have to show that the deducted 2.5 hours of lunch caused them to lose wages not at their regular hourly rate but at their overtime rate. *Id.* This is inherently more speculative and a greater risk of obtaining such relief exists. In sum, the recovered amount for the FLSA Collective provides a fair recovery.

### C. Settlement Avoids Complex, Costly and Lengthy Litigation(s), Fraught With Risk

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000) (citation omitted). This case is no exception, with the relevant period covering a time frame extending from May 6, 2016 through March 10, 2025 and covering more than 100 people. The Parties have engaged in the production, review and analysis of substantial discovery, including conducting 23 depositions, participating in four separate all-day mediation sessions, as well as attending two settlement conferences before Judge Pollak, to understand and appreciate the strengths and weaknesses of this case and responsibly and efficiently engage in settlement negotiations. Christensen Decl., ¶¶ 33, 55. Even so, this process was arduous and time- and resource-consuming. Proceeding to trial whereupon all members of the FLSA Collective would potentially be required to testify would be even more

costly and time-consuming. Proving liability under the FLSA is an inherently fact-intensive process, and the defenses available to Defendant would pose substantial risk as to both liability and damages.

On February 25, 2025, Your Honor Ordered Momentum to Show Cause why it should not be sanctioned for failing to produce relevant wage and hour documents in violation of Magistrate Judge Pollak's previous orders. Although Momentum contests that it did not fail to comply with Magistrate Judge Pollak's orders, Momentum had only produced self-generated Excel spreadsheets that purportedly reflected the hours worked by the FLSA Collective. The lack of payroll records would almost certainly have required each plaintiff to testify as to the actual number of hours they worked as Momentum employees. This would be an incredibly expensive and time-consuming undertaking as the trial would be lengthy. Under the factors outlined in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the proposed FLSA settlement easily satisfies the standard of fair and reasonable. *See also Santiago v. Agadjani*, No. 21 Civ. 7090, 2024 WL 4480106, at *2 (E.D.N.Y. Oct. 11, 2024) (Matsumoto, J.) (citing *Li Rong Gao v. Perfect Team Corp.*, 249 F. Supp. 3d 636, 638 (E.D.N.Y. 2017); *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680, 2016 WL 3455383, at *2 (S.D.N.Y. June 20, 2016)).

There is no risk of fraud or collusion as the Parties attempted to settle the case through mediation multiple times. Finally, on March 10, 2025, with the assistance of Martin F. Scheinman – an accomplished mediator with over 45 years of experience – a resolution was reached. Mr. Scheinman's involvement in the process strongly indicates that there was no fraud or collusion at play. *See Cisneros v. Borenstein Caterers, Inc.*, No. 23 Civ. 1409, 2024 WL 5243504, at *4 (E.D.N.Y. Dec. 30, 2024) (Matsumoto, J.) (noting that there was no evidence of fraud or collusion where the settlement was "the product of a full-day mediation session before

an experienced mediator").  If the settlement were rejected and the Parties proceeded to trial, substantial risks are presented to all sides, and particularly to Named Plaintiffs and opt-in Plaintiffs who bear the burden of persuasion.   Furthermore, even after a verdict, any judgment is likely to be appealed.   Settlement, however, makes relief available to all FLSA Collective members in a prompt, efficient and risk-free manner.  For the above reasons, the Settlement is "fair, adequate, and reasonable, and not a product of collusion," (*Frank*, 228 F.R.D. at 184), and should be approved.

### D.     The Named Plaintiffs and Opt-in Plaintiffs were Common Victims of an FLSA Violation

"[T]he efficient resolution in one proceeding of common issues of law and fact arising from the same alleged FLSA violation … can only be achieved to the extent that named plaintiffs and opt-in plaintiffs share one or more issues of law or fact that are material to the disposition of their FLSA claims."  *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020).  "Thus, to be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation."  *Id.* (citation omitted).

Both the Named Plaintiffs and the Opt-in Plaintiffs were "common victims of a[n] FLSA violation."  *McGlone v. Cont. Callers, Inc.*, 49 F. Supp. 3d 364, 368 (S.D.N.Y. 2014).  Namely, Defendant Momentum Solar failed to pay them for all hours worked and to pay overtime by automatically deducting 30 minutes from each Plaintiff's hours worked each day for a "lunch break," regardless of whether they actually did take such breaks (and they rarely, if ever, did). These deductions would result in approximately 2.5 hours of lost wages per Plaintiff per week. Since the Plaintiffs almost always worked more than 40 hours per week, these lost wages would have been calculated at their overtime rate.

The *McGlone* case involved a similar FLSA violation; there, the plaintiffs alleged that "they were required to sign in at 8:00 a.m. and sign out at 4:30 p.m. and record a half-hour break for lunch each day, for a total of 40 hours of work each week. Plaintiffs' deposition testimony indicates they were "shorted" on their hours by being required to work "off the clock" before and after their standard shifts and that a half hour was deducted for meal breaks even though they were unable to take a bona fide half-hour break to eat. *Id.* Additionally, the plaintiffs "all held the same job position, were geographically located in the same [] facilities, and had the same supervisors." *Id.* Here, all Plaintiffs, both Named and Opt-in, (1) were subject to the automatic lunch break deductions; (2) worked as part of a solar panel installation crew as installers, electricians, roof leads and foremen and had substantially similar job requirements; (3) were located in New York and New Jersey and were based out of the same warehouses; and (4) had the same supervisors. Because the Named and Opt-in Plaintiffs share these material similarities, any "dissimilarities in other respects should not defeat collective treatment." *Scott*, 954 F.3d at 516.

## II.   <u>SERVICE AWARDS</u>

Named Plaintiffs respectfully request the approval of Service Awards in the total amount of $44,000 for coming forward and being willing to bring claims against their current or former employer. Named Plaintiff Garreth Murrell first retained Wigdor in November 2018 and he actively participated in litigating this action against through settlement. In December 2018 five other former employees were retained by Wigdor (Tevin Brown, Kenneth Sapp, Raoul Gerdes, Chevon Riley and Shaddon Beswick) and together with Murrell, commenced the Action. In September 2019, Joseph Ashby joined as a Named Plaintiff and as a potential Class Representative for all New Jersey Installation Department field employees. These seven Named Plaintiffs litigated this action for more than five years and all provided valuable information in

support of the claims alleged in this action, including declarations and other work towards having the motion granted for preliminary approval to proceed as a collective action, which was filed on February 14, 2020.  ECF 52.  Christensen Decl. ¶¶ 12-17.

Following the grant of conditional certification on September 18, 2020 (ECF 63), eleven (11) additional Named Plaintiffs joined the case and on July 22, 2021, the Second Amended Complaint was filed.  ECF 209.  As set forth in the Christensen Declaration, all Named Plaintiffs participated in full discovery, including: (i) responding to interrogatories from Momentum Solar; (ii) responding to document requests from Momentum Solar; (iii) responding to interrogatories from the Individual Defendants; (iv) responding to document requests from the Individual Defendants; (v) attending mediation sessions; and (vi) preparing for and sitting for their in-person depositions during which they were questioned by counsel for both Momentum Solar and the Individual Defendants.[3]  Christensen Decl. ¶ 33.

Their assistance and perseverance was instrumental in reaching the Settlement, and warrants approval of the modest Service Awards they seek, in the amounts of $4,000 for Murrell, $3,000 for the other five who commenced the action plus Ashby, and $2,000 for the remaining eleven Named Plaintiffs who joined after the preliminary approval motion was granted.

In examining the reasonableness of service awards, courts consider: (1) time and effort expended by class representatives during the litigation; (2) burdens sustained by the class representatives, including personal risk; and (3) the ultimate recovery.  *See Chodkowski v. Cnty. of Nassau*, No. 16 Civ. 5770 (JMW), 2021 WL 3774187, at *4 (E.D.N.Y. Aug. 25, 2021) (finding reasonable service awards making up a total of 4.6% of the proposed settlement).    Courts

---

[3]     The exception to the in-person requirement by Defendants was Kevin Fowler who resides in North Carolina and his deposition was conducted via video.

recognize the important factual knowledge that class representatives bring to employment class actions, including information about policies and practices that affect wages. *See Frank*, 228 F.R.D. at 187 (recognizing the important role that class representatives play as the "primary source of information concerning the claims."). The requested Service Awards are reasonable considering the time and effort and services rendered by Named Plaintiffs as stated above, and further included, *inter alia*: (i) coming forth and engaging Wigdor to pursue their claims and the claims of the FLSA Collective; (ii) assisting in the preparation of the Complaint and other pleadings and correspondences to Defendants; (iv) searching for relevant documents and completing discovery including depositions; (v) regularly meeting and communicating with Wigdor during all phases of the litigation process; (vi) otherwise making themselves available to answer questions and (viii) undertaking the risk of retaliation by pursuing claims against a former employer; and (ix) undertaking the risk of litigation costs and expenses in the event a favorable litigation outcome did not result for Plaintiffs. Without these efforts, this case would not have been brought nor the Settlement reached.

Finally, the requested Service Awards of $4,000 to Plaintiff Murrell, $3,000 to the other initial six Plaintiffs and Plaintiff Ashby, and $2000 to the remaining eleven Named Plaintiffs, for a total sum of $44,000 are reasonable considering the settlement amount of $630,000. *See Chodkowski*, 2021 WL 3774187 at *4 (E.D.N.Y. Aug. 25, 2021) (finding reasonable service awards making up a total of 4.6% of the proposed settlement); *Rotthoff v. New York State Cath. Health Plan, Inc.*, No. 19 Civ. 4027, 2021 WL 1310220, at *3 (E.D.N.Y. Apr. 8, 2021) (granting service award making up approximately 4% of total settlement in part because "in bringing the litigation, the representative plaintiff risked the disfavor of future employers"); *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) ($10,000

service awards to four plaintiffs ($40,000) from $440,000 settlement fund); *Matheson v. T-Bone Rest., LLC*, No. 09 Civ. 4214 (DAB), 2011 WL 6268216, at *10 (S.D.N.Y. Dec. 13, 2011) (service awards of $45,000 and $5,000 for each of two named plaintiffs); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (service awards of $15,000 to three plaintiffs each and $5,000 to one plaintiff, totaling $50,000 of the $300,000 fund). Here, the requested Service Awards are reasonable and should be granted.

## III. <u>WIGDOR'S 33.3% FEES SHOULD BE APPROVED</u>

### A. <u>The Court Preliminarily Approved Wigdor as Class Counsel</u>

Through an Order dated September 18, 2020 granting conditional certification, the Court appointed Wigdor as Class Counsel. ECF 63. Wigdor is entitled to reasonable attorneys' fees to compensate it for the substantial work identifying, prosecuting and settling Named Plaintiffs' and the FLSA Collectives' claims over the course of almost 6 years. Wigdor's request for 33.3 percent of the Settlement Amount, or $209,790 is reasonable and consistent with judicial norms, and over the past thirteen years other courts have granted Wigdor fees in the amount of 33.3% in wage and hour and other class actions. *See, e.g., Faroque et al v. Park West Executive Services, et al*., No. 15 Civ. 06868 (DLI) (CLP) (E.D.N.Y. 2019) (wage and hour granting fee approval motion for one-third of the $850,000 settlement using discounted hourly rates of $750 for Christensen; $495 for Tanvir Rahman and paralegals $185, using multiplier of .909 to arrive at fees of $283,333); *Jacobs, et al. v. Washington Place, LLC, et al*., No. 403148/2017 (Sup. Ct. Kings Cty 2017) (wage and hour granting final approval and granting fees of $666,000 which were one-third of $2 million using a multiplier of approximately 4.16 to lodestar of $159,925.50, and reduced hourly rate of $750 Christensen; $495 Rahman; $185 paralegals); *Das v. Hakkasan NYC, LLC, et al*., No. 15 Civ. 8411 (RLE), Dkt. No. 42 (S.D.N.Y Oct. 27, 2016) (wage and hour approving fee application at

level above lodestar rate using hourly rates of $700 for partner time, $450 for senior associate time, $210 for law clerk time, and $180 for paralegal time); *Omar, et al. v. Broadway Regency Restaurant LLC, et al.*, No. 16 Civ. 0139 (GBD), Dkt. No. 40 (S.D.N.Y. Jan. 19, 2017) (wage and hour approving fee application using reduced rates of $700 for partner time, $450 for senior associate time, $325 for other associate time, and $180 for paralegal time); *Sanz, et al. v. Johny Utah 51 LLC, et al*., No. 14 Civ. 4380 (JMF), Dkt. No. 120 (S.D.N.Y. Apr. 20, 2015) (approving fee application payment of attorney's fees and expenses, where wage and hour claims brought alongside gender discrimination claims); *Raniere v. Citigroup, Inc*., 310 F.R.D. 211, 220-22 (S.D.N.Y. 2015) (awarding 33% of settlement fund of $4.65 million wage-and-hour action to Wigdor approving fee application at level above lodestar rate using billing rates of $650 for partner time, $250-$550 for associate time, and $180 for paralegal time*); Munir v. Sunny's Limousine Service, Inc., et al.*, No. 13 Civ. 1581 (VSB), Dkt. No. 155 (S.D.N.Y. Jan. 8, 2015) (wage and hour approving fee application at level above lodestar which was one-third of $3.5 million settlement); *Kule-Rubin, et al. v. Bahari Group Limited, et al.*, No. 11 Civ. 2424 (TPG), Dkt. Nos. 23, 43 (S.D.N.Y. Nov. 15, 2012) (approving contingency fee based on full hourly rates); *Byrne, et al. v. RMJM, Inc., et al.*, No. 12 Civ. 8203 (AT), Dkt. No. 58 (S.D.N.Y. Oct. 21, 2013) (approving fee application using hourly rates of $750 for partner time, $500 for senior associate time, and $300 for other associate time); *Asare v. Change Grp. of New York, Inc.*, No. 12 Civ. 3371, 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) (approving fee application using rates of $750 for partner time, $500 for senior associate time, $300 for associate time).

Here, requested fees of 33.3 percent, totaling $209,790 are less than the fees incurred by Wigdor using a lodestar cross check. The fees are based on 880.50 hours totaling $536,582.

Exhibit 7; Christensen Decl. ¶¶ 64-66.    Accordingly, the requested amount of $209,790 is reasonable and fair and should be approved.

**B.    The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases**

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.    *See Frank*, 228 F.R.D. at 189.    Where relatively small claims can only realistically be prosecuted through aggregate litigation, the law relies on prosecution by "private attorneys general" who must be adequately compensated for their efforts.    *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980).    If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.    *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (endorsing the "sentiment" of "providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").    Courts in this circuit prefer a percentage of the fund method in common fund cases.    *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010).    The percentage method "directly aligns the interests of the class and its counsel" by encouraging attorneys to resolve the case efficiently and to create the largest common fund from which payments to the class can be made.    *Wal-Mart Stores*, 396 F.3d 116 at 121; *see also Goldberger*, 209 F.3d 43 at 47-50.    The percentage method also "mimics the compensation system actually used by individual clients to compensate their attorneys."    *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (percentage method "consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients").    The percentage of the fund method also "provides a powerful incentive for the efficient prosecution and early resolution of the litigation."    *Wal-Mart Stores*, 396 F.3d at 121.    The percentage method is

the trend in settlement fund cases rather than the lodestar method. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Wal-Mart Stores Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re Beacon Assocs. Litig.*, 2013 WL 2450960 at *5 (S.D.N.Y. May 9, 2013) ("The trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases.").

Finally, the percentage method also preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie v. Merchs. Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999) (internal quotation marks omitted). Thus, where the lodestar is a mere cross-check, the attorney hours need not be excessively scrutinized. *Goldberger*, 209 F. 3d at 50; *see also Cassese*, 503 F. App'x 55, 59 (2d Cir. 2012) (the "need for exact [billing] records [is] not imperative" where the lodestar is used as a "mere cross-check.").

A lodestar cross-check in this Action shows that Wigdor should receive its requested fee that is below the lodestar amount and is a reasonable number given the litigation and bringing this matter to resolution.

### C.     The "Reasonableness" Factors Articulated in *Goldberger* Support an Award of 33.3% of the Settlement Fund

The Second Circuit Court of Appeals in *Goldberger* articulated six factors to determine the reasonableness of fee applications: (1) time and labor expended; (2) magnitude and complexities of the litigation; (3) risk of litigation; (4) quality of representation; (5) requested fee in relation to the settlement; and (6) public policy considerations. *Id.* at 50. All *Goldberger* factors weigh in favor of approving Wigdor's fee application.

#### 1.     Wigdor's Time and Labor

As discussed above, since Wigdor began its investigation of Plaintiffs' claims, it has

expended significant effort to achieve the settlement. Considering the substantial time dedicated to the investigation, prosecution and resolution of this matter, over more than 6 years, if the Court were to apply a lodestar cross-check to the fee award request, the Court would find Wigdor's fee request entirely reasonable. To date, Wigdor has expended almost 900 hours performing the tasks noted above and will exceed that amount in connection with the work to facilitate this settlement.[4] Ex. 7.

Wigdor's current regular hourly rates charged to and paid by hourly paying clients range from $1,000 and $2,000 per hour for partners' time, $450.00-$850.00 per hour for associates' time (depending on seniority), and $180 per hour for paralegals' time. Christensen Decl. ¶ 67. Numerous courts have approved Wigdor's hourly rates in class action final approval motions, including in 2013, more than 12 years ago approving rates of $750 for partner time and $500 for senior associate time. *Byrne, et al. v. RMJM, Inc., et al.*, No. 12 Civ. 8203 (AT), Dkt. No. 58, (S.D.N.Y. Oct. 21, 2013)) (in approving attorneys' fees and expenses, acknowledging Wigdor's hourly rates of $750 for partner time, $500 for senior associate time, and $300 for other associate time).

As set forth in the Christensen Declaration, the lodestar for Wigdor's work on this matter for more than 6 years is $536,582 based on 880.50 hours of work.[5] Ex. 7. As such, the request for fees in the amount of $209,790 is reasonable and fair to the FLSA Collective. Moreover, Wigdor regularly turns away hourly-paying clients given the firm's caseload and commitments to

---

[4]    Wigdor's work on the case is continuing throughout settlement administration, which will involve coordination with Arden Claims Service and likely fielding dozens of calls from FLSA Collective members. Therefore, the hours expended to date only partly reflect the hours Wigdor will ultimately devote to the resolution of this action.

[5]    These hours were compiled from contemporaneous time records maintained by each attorney and paralegal on the case. Moreover, wherever feasible and appropriate, Wigdor assigned work to paralegals, minimizing attorney time. Christensen Decl. ¶¶ 65-67.

contingency clients. Of course, Wigdor also cannot take on all contingency clients who contact the firm with potentially meritorious cases and must turn down the vast majority of them. In addition, for contingency work, Wigdor may not end up getting paid or might eventually get paid at a rate well below the firm's billable hourly rates. Given this construct, any additional risk associated with taking on contingency clients (such as a Court not approving a one-third contingency fee) would make it difficult to represent employees (like the FLSA Collective here) who deserve high quality representation but cannot pay the firm's regular hourly rates. Furthermore, Courts regularly approve fee applications involving cross-checks with multipliers of up to eight times the lodestar, and often higher. *See*, *e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing class action settlements where multiplier ranged up to 8.5 times); *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 482 (S.D.N.Y. Apr. 23, 2013) (approving fees of 33% of settlement, totaling $1,617,000, 6.3 times lodestar); *Khait v. Whirlpool Corp.*, No. 06–6381(ALC), 2010 WL 2025106, at *8 (E.D.N.Y. Jan.20, 2010) (awarding class counsel 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case).

### 2. Magnitude and Complexity of the Litigation

The Settlement will bring final resolution to the claims of more than 100 individuals. Under the second *Goldberger* factor, the size and difficulty of the issues in a case are significant factors to be considered in making a fee award. *See Goldberger*, 209 F.3d at 50. Here, the size of the class and the complexity of the factual and legal questions involved (detailed *supra*) support the reasonableness of the requested fee award. *See Johnson*, 2011 WL 4357376, at *17 ("Courts have recognized that wage-and-hour cases involve complex legal issues"). Further, settlement negotiations were conducted at arm's length, after discovery was completed and 23 depositions conducted. Therefore, the second *Goldberger* factor strongly supports Wigdor's

attorneys' fee request.

### 3. Risk of Litigation

The risk of litigation is "perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005) (internal quotation marks omitted). "[D]espite the most vigorous and competent of efforts, success is never guaranteed." *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974).

Wigdor prosecuted this action on a wholly contingent basis in the face of tremendous risk. Large-scale wage and hour cases of this type are, by their nature, complicated and time-consuming, and require a tremendous investment of time, energy and resources. Due to the contingent nature of the fee arrangement, lawyers must make this investment with the real possibility of an unsuccessful outcome and no fee at all. Wigdor stood to gain nothing in the event the case was unsuccessful. As such, Wigdor should be awarded attorneys' fees that recognize the significant assumptions of risk associated with representing employees of relatively modest-sized companies in niche fields, where concerns over collectability are often significant. If not, quality attorneys would be deterred from representing employees working for small employers, resulting in the unfortunate likelihood that small employers will not be held accountable for wage and hour violations.

Moreover, the circumstances of this case presented numerous hurdles to a successful recovery, including a risk of financial instability of the Defendant. Despite these risks, Wigdor secured a substantial settlement that will be paid out. Therefore, Counsel should be awarded attorneys' fees that recognize the significant assumptions of risk associated with representing employees of relatively modest sized companies, like here. Otherwise, quality attorneys would

be deterred from representing employees working for small employers, which would have the unfortunate result of decreasing the likelihood that small employers will be held accountable for their wage and hour violations.

### 4.    Quality of Representation

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) (internal quotation marks omitted).    Here, the results speak to the quality of the representation.    In Wigdor's estimation, had Plaintiffs succeeded on the claims for unpaid hours due to the lunch breaks, and had they been awarded full liquidated damages, the best-case scenario result would have been approximately $424,631.    Christensen Decl. ¶¶ 54-55.    Even if the FLSA Collective members received 100% liquidated damages for these unpaid hours, the damages would total $849,262. *Id.*

The settlement of $630,000 represents an extremely reasonable and fair value to the FSLA Collective given the attendant risks of litigation, though recovery potentially could be greater if Plaintiffs prevailed on every claim and issue.    Wigdor's diligent work litigating all the way through discovery with 18 Named Plaintiffs demonstrates its commitment to the FLSA Collective Members and their interests.

### D.    <u>Fee in Relation to the Settlement</u>

Courts also consider the size of the settlement to ensure that the percentage award does not constitute a "windfall."    *See*, *e.g.*, *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2007 WL 2743675, at *16 n.41 (E.D.N.Y. Sept. 18, 2007).    Courts routinely grant requests of approximately one-quarter to one-third of the fund in cases with settlement funds substantially larger than this one.    *See*, *e.g.*, *Raniere,* 310 F.R.D. at 221 (approving Wigdor's one-third fee application in settlement fund of $4.65 million); *Munir*, No. 13 Civ. 1581 (VSB), Dkt. No. 155

(S.D.N.Y. Jan. 8, 2015) (approving Wigdor's fee application of one-third of $3.5 million settlement); *Khait*, 2010 WL 2025106 at *9 (E.D.N.Y. Jan. 20, 2010) (awarding Wigdor LLP 33% of $9.25 million settlement).

### 1. Under an Optional Lodestar Cross-Check, the 33.3% Fee is Reasonable

"When a lodestar is used as a mere cross-check the hours documented by counsel need not be exhaustively scrutinized by the court." *Goldberger*, 209 F.3d at 50; *Cassese v. Williams*, 503 F. App'x 55, 59 (2d Cir. 2012).

The "lodestar" method requires the court to multiply the "reasonable number of hours required by the case" by a "reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008) (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). The result of this calculation is a "presumptively reasonable fee." *Id.* Courts may also use the "percentage of the fund" method, which allows attorneys to collect a previously determined percentage of the total settlement amount. *Santiago*, 2024 WL 4480106 at *5 (citing *McDaniel v. County of Schenectady*, 595 F.3d 411, 417-19 (2d Cir. 2010). "However, even where fees are reasonable when analyzed under the percentage method, courts will additionally perform a lodestar 'cross-check' and 'compare the fees generated by the percentage method with those generated by the lodestar method.'" *Id.* (quoting *Mobley v. Five Gems Mgmt. Corp.*, 17 Civ. 9448, 2018 WL 1684343, at *4 (S.D.N.Y. Apr. 6, 2018)).

While a district court must calculate the "lodestar," it is not "conclusive in all circumstances." *Millea*, 658 F.3d at 167 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, (2010)). "A determination whether a settlement amount is reasonable is not susceptible to a mathematical equation yielding a particularized sum but must account for the uncertainties of

law and fact in any particular case." *Kazadavenko v. Atlantic Adult Day Care Center Inc.*, No. 21 Civ. 3284 (ENV), 2022 WL 2467541, at *2 (E.D.N.Y. Apr. 14, 2022) (citations and quotations omitted); *Perez-Ramos v. St. George Holding Corp.*, No. 18 Civ. 1929, 2020 WL 415818, at *3 (E.D.N.Y. Jan. 27, 2020) (Matsumoto, J.). However, when the requested amount is substantially similar to the "lodestar," courts generally will consider it "reasonable." *See*, *e.g.*, *Cisneros*, 2024 WL 5243504, at *5. Here, Counsel for the FLSA Collective is seeking $209,700, an amount below the lodestar cross-check. Christensen Decl. ¶ 66.

The Supreme Court has held that the use of current rates at the time the fee application is made is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 US 274, 283-84 (1989) (recognizing an appropriate adjustment for delay in payment whether by the application of current rather than historic hourly rates or otherwise"); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("The lodestar should be based on prevailing market rates. . . . And current rates rather than historic rates should be applied in order to compensate for the delay in payment").

### E.      Public Policy Considerations

Public policy considerations weigh in favor of granting Wigdor's requested fees. The FLSA is a remedial statute designed to protect the wages of workers. Fair compensation for attorneys who prosecute those rights by taking on such litigation furthers the remedial purpose of this statute. *See*, *e.g.*, *Prasker v. Asia Five Eight, LLC*, No. 08 Civ. 5811 (MGC), 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage-and-hour abuses would go without remedy because attorneys would be unwilling to take on the risk."). Courts recognize that fee awards in class actions serve the dual purposes of encouraging "private attorneys general" to seek

redress for violations and discourage future similar misconduct. *See Deposit*, 445 U.S. at 338-39. Courts, therefore, look with favor upon awarding attorneys' fees in class actions that "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized." *Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir. 1973). In this case, awarding the requested fees will encourage the prosecution of similar claims and further a significant public interest goal. For this and all the other reasons set forth herein, the Court should grant Wigdor's fee request.

## IV.     <u>WIGDOR SHOULD BE REIMBURSED FOR LITIGATION EXPENSES</u>

"It is well settled that attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 272 (S.D.N.Y. 2012). Here, since 2019, Wigdor has incurred unreimbursed costs of $46,905.26 but is allocating fifty percent of this amount, $23,452.63 to the FLSA Collective and the remaining amount to the settlement in the Race Claims. Christensen Decl. ¶¶ 58-59. Further, Wigdor is seeking reimbursement of these expenses, some incurred five years ago, without interest. Wigdor respectfully requests $23,452.63 from the Settlement as reimbursement for expenses incurred in this litigation.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court preliminarily approve the FLSA Collective Settlement and approve the proposed Notice form and order a time and date for a fairness hearing.

Dated: February 5, 2026
      New York, New York

                        Respectfully submitted,

                        **WIGDOR LLP**

By: _____
                        Jeanne M. Christensen
                        Noah Jacobs

                        85 Fifth Avenue
                        New York, NY 10003
                        Telephone: (212) 257-6800
                        Facsimile: (212) 257-6845
                        jchristensen@wigdorlaw.com
                        njacobs@wigdorlaw.com

                        *Counsel for Plaintiffs*