United States District Court
Eastern District of New York

----------------------------------X

Garreth Murrell, et al.,

        Plaintiffs,

  - against -

Pro Custom Solar LLC d/b/a Momentum
Solar, et al.,

        Defendants.

----------------------------------X

**Memorandum & Order**

19-cv-2656 (KAM) (PCG)

**Kiyo A. Matsumoto, United States District Judge:**

Plaintiffs Garreth Murrell, Tevin Brown, Kenneth Sapp, Raoul Gerdes, Chevon Riley, Shaddon Beswick, Joseph Ashby,[1] Maurice Perry, Antwan Senior, Pablo Dominguez, Luis Taylor, Vaughn Burke, Andrae Brown, Antonio Zapata, Kevin Fowler, Morens Badiau, Giovanni Benjamin and Christopher Mercure (collectively the "Named Plaintiffs" or "Plaintiffs"), on behalf of themselves and the individual opt-in members who filed "Consent to Join" notices in this action, (the "Opt-in Members," together with the Named Plaintiffs, the "FLSA Collective"), move this Court for final approval of the FLSA Settlement Agreement; $209,790 in attorneys'

---

[1] On October 10, 2025, the Court granted Samantha Ashby's motion for substitution. (ECF No. 357.) Ms. Ashby is the administrator of Joseph Ashby's estate.

fees and $22,823.49[2] in costs; $44,000 in Service Awards; and a $22,000 payment to the Claims Administrator. (ECF No. 375, the "Notice of Motion"; ECF No. 376, the "Pearson Decl."; and ECF No. 377, the "Mem. of Law" or "MOL;" collectively the "Motion" or "Mot.".)

Defendant Momentum Solar LLC (formerly Pro Custom Solar d/b/a Momentum Solar) ("Defendant" or "Momentum") does not oppose the Motion. For the reasons set forth below, the Plaintiffs' Motion is GRANTED.

## BACKGROUND

### I.   The Complaints

On May 6, 2019, six Named Plaintiffs Garreth Murrell, Tevin Brown, Kenneth Sapp, Raoul Gerdes, Chevon Riley, and Shaddon Bewick (the "New York Plaintiffs") commenced this action on behalf of themselves and all similarly-situated employees against Momentum, Jessica Adams, Rajan Silberman and Adam Murawski (together with Jessica Adams and Rajan Silberman, the "Individual Defendants" and together with Momentum, "Defendants") alleging class and collective wage and hour violations including failure to pay for all hours worked and failure to pay overtime under the FLSA and New York law and claims of racial discrimination, harassment, and

---

[2] Wigdor LLP originally requested $23,452.63 in reimbursement for costs in the Motion but has since withdrawn its request for reimbursement of $629.41 in meal expenses. (*See* ECF No. 383.)

unlawful retaliation under 42 U.S.C. § 1981, the New York State Human Rights Law and New York City Human Rights Law. (*See generally* ECF No. 1, the "Original Complaint".)

On September 20, 2019, the New York Plaintiffs amended the Original Complaint to add plaintiff Joseph Ashby ("Ashby") who joined in the original New York Plaintiffs' collective FLSA claims and alleged violations of the New Jersey Wage and Hour Law ("NJWHL") on behalf of himself and all other similarly situated New Jersey-based Field Installation Department employees (the "New Jersey Subclass"). (ECF No. 25, the "Am. Compl.".)[3] On July 22, 2022, Plaintiffs filed a Second Amended Complaint adding Title VII discrimination and retaliation claims on behalf of Named Plaintiff Garreth Murrell. (ECF No. 209 ¶¶ 303-310.)

On February 2, 2022, Plaintiffs filed the operative Third Amended Complaint adding eleven new Named Plaintiffs but no new claims. (*See generally* ECF NO. 256, the "TAC".) The Named Plaintiffs alleged labor law violations pursuant to the Fair Labor Standards Act ("FLSA Claims"), New York Labor Law ("NYLL"), and New Jersey Wage and Hour Law ("NJWHL") on behalf of themselves and a putative collective lass of similarly situated New York and New Jersey-based Field Installation Department employees

---

[3] Plaintiff Ashby did not allege claims of race discrimination or retaliation. (ECF No. 25.)

(collectively, the "Wage and Hour Claims"). (TAC ¶¶ 24, 392-422.)

Plaintiffs' FLSA Claims alleged that Momentum failed to pay the appropriate overtime wages for all hours worked over 40 hours in a workweek because Momentum automatically deducted 30 minutes of compensable time each day for a meal break even though Plaintiffs rarely, if ever had the chance to take a break. (TAC ¶¶ 259, 333.)

Plaintiffs also brought race discrimination and retaliation claims, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") (together the "Race Claims"). (TAC ¶¶ 368-391.) On February 21, 2025, the Court bifurcated the Race Claims from the Wage and Hour Claims to "expedite and economize" trial pursuant to Fed. R. Civ. P. 42(b). (Minute Entry dated Feb. 21, 2025.)

## II.   The FLSA Collective Action

On September 18, 2020, the Court granted Plaintiffs' motion for conditional certification of a collective action under the FLSA of

> All Field Installation Department employees who worked for Momentum out of its New York and New Jersey warehouses during the full statutory period, including, but not limited to, installers, electricians, roof leads and foremen.

(Am. Compl. ¶ 199; TAC ¶ 329; *see also* ECF No. 63 at 21-22.) One hundred and two (102) current and former employees filed Consent

4

to Join forms with the Court pursuant to the FLSA, 29 U.S.C. § 216(b), and opted into the action. (*See e.g.*, ECF No. 72, *see also* MOL at 2.) Each former employee who filed a Consent to Join form agreed to "designate the [N]amed [P]laintiffs as [the employee's] agents to make decisions on [the employee's] behalf concerning the lawsuit" including, *inter alia*, "entering into a settlement agreement." (*See e.g.*, ECF No. 72.) Each Opt-in Member also "designate[d] Wigdor LLP" to be its counsel. (*Id.*) The FLSA Collective consists of a total of 120 individuals, 18 Named Plaintiffs and 102 Opt-In Members. (*Id.*)

## III. Settlement Efforts and Discovery

This litigation has had a long contentious history including numerous discovery disputes. (*See e.g.*, Pearson Decl. ¶¶ 23, 34; ECF Nos. 207, 277, 295.) All eighteen Named Plaintiffs were deposed and the Parties engaged in six settlement and mediation sessions. (Pearson Decl. ¶¶ 13, 22, 29, 33, 40.)

Pre-litigation, Wigdor LLP, ("Collective Counsel"), was retained by the New York Plaintiffs and attempted to resolve the claims in April 2019 in a JAMS mediation before the Hon. Allen Herkin-Torres. (Pearson Decl. ¶¶ 12, 13.) After conditional certification in May of 2021, the Parties engaged in another unsuccessful private mediation attempt with the assistance of Carol Wittenberg, a JAMS mediator. (Pearson Decl. ¶ 22.) On April 14, 2022, the Parties appeared before Magistrate Judge Pollak for

5

a settlement conference and engaged in a follow-up settlement session on May 16, 2022. (Pearson Decl. ¶ 29.) Both were unsuccessful. (*Id.*)

On October 22, 2024, Plaintiffs requested a trial date. (ECF No. 300.) Upon Momentum's failure to answer the operative complaint and upon the direction of the Court, on November 7, 2024, Plaintiffs requested a Certificate of Default, which the Clerk of Court entered on November 14, 2024. (ECF Nos. 308, 309.) On November 15, 2024, Plaintiffs filed a motion for default judgment due to Momentum's failure to answer the operative complaint. (ECF No. 310.) That same day, Momentum answered the operative complaint, (ECF No. 312), and the Court denied Plaintiffs' motion for default judgment, (Dkt. Order dated Nov. 25, 2024.)

On February 21, 2025, the Court admonished Momentum for its years-long failure to produce critical wage and hour documents and issued an Order to Show Cause on why Momentum should not be sanctioned for failing to comply with discovery orders. (Pearson Decl. ¶ 38).

On March 10, 2025, the Parties engaged in their final mediation session with Martin Scheinman. (Pearson Decl. ¶¶ 40, 41.) On March 11, 2025, the Parties informed the Court that they had reached an agreement to settle the matter in its entirety. (ECF No. 344.) This session resulted in an agreement in principle between the Parties to resolve the FLSA Claims for an aggregate

6

sum of $630,000. (Pearson Decl. ¶ 41.) The session also resulted in an agreement to settle the Race Claims, the terms of which are confidential, (the "Race Claims Settlement Agreement.") (Pearson Decl. ¶ 42.) Resolution of the FLSA Claims was contingent on simultaneous resolution of the Race Claims. (Pearson Decl. ¶ 43.)

## IV.  The Settlement Agreement and Settlement Administration

Under the FLSA Settlement Agreement, Defendant "shall cause $630,000 to be deposited into an escrow account maintained by the Claims Administrator." (FLSA Agreement § 3.1(A).) The FLSA Settlement Agreement "settle[s], fully and finally, all FLSA Claims asserted in the [instant action]." (FLSA Agreement at 1.)

Upon entry of the Final Approval Order, the FLSA Collective releases Defendants from all wage and hour claims "that could have been asserted under federal laws or any state or municipal wage and hour laws" through the execution date December 17, 2025. (FLSA Settlement Agreement § 4.1(A).)

## V.  Motions for FLSA Settlement Approval

On May 19, 2025, Plaintiff filed an unopposed Motion for Final Settlement Approval of the FLSA Settlement. (ECF Nos. 350-52) In this initial Motion for Final Settlement Approval, the Plaintiffs represented that on May 16, 2025, all Opt-in Members were emailed a copy of the proposed FLSA Settlement Agreement. (ECF No. 351 at 20, Ex. 9.) On January 16, 2026, the Court denied without prejudice to refiling Plaintiffs' Motion for Final Settlement

Approval of the FLSA Settlement because: (i) the proposed FLSA Settlement Agreement submitted to the Court was unexecuted; (ii) did not include a notice procedure that would provide Opt-In Members the ability to review or object to the FLSA Settlement Agreement; and (iii) did not set forth how the Named Plaintiffs and Opt-In Members were alike with regard to some material aspect of the litigation. (Dkt. Order dated Jan. 16, 2026.) On January 23, 2026, the Parties confirmed that there was an executed FLSA Settlement Agreement and an executed Race Claims Settlement Agreement. (ECF No. 360.)

On February 5, 2026, Plaintiffs filed the instant motion for preliminary FLSA Settlement approval. (ECF Nos. 363-65.) On March 31, 2026, the Court preliminarily approved Plaintiffs' unopposed motion for preliminary FLSA Settlement approval; approved Plaintiffs' Proposed Notice of Settlement, with certain modifications; set notice, objection and opt-out deadlines; appointed Arden Claims Service LLC as Claims Administrator (the "Claims Administrator"); and set a Final Fairness Hearing for May 28, 2026. (ECF No. 366, "Preliminary Approval Order.") On April 9, 2026, the Court granted Plaintiffs' request to extend the deadline to send email notices to all FLSA Collective members to April 20, 2026; extended the opt-out and objection deadline to May 11, 2026; and extended the deadline to notify the Court of any objections or requests for exclusions received to May 18, 2026.

(Dkt. Order dated Apr. 9, 2026.)

On April 28, 2026, the Plaintiffs filed their Motion for Final Approval of the FLSA Collective Settlement. (ECF No. 375-77.) On May 5, 2026, the Plaintiffs informed the Court that Momentum had represented that the FLSA Settlement Agreement would not bar FLSA Collective members from recovering under a recent settlement in New York Supreme Court, Nassau County, *Domenick Sacca v. Pro Custom Solar LLC n/k/a Momentum Solar LLC*, Index No. 614425/2025 (the "Sacca Action"), if eligible, because the "releases in this case would not prevent eligible former employees from recovery in the *Sacca* settlement." (ECF No. 379 at 1-2, Ex. 3.)

On May 18, 2026, the Plaintiffs informed the Court that the Claims Administrator had completed notice and received no objections or opt-out requests. (ECF No. 381.)

## VI.   Final Fairness Hearing

On May 28, 2026, the Court held a Final Fairness Hearing. The Parties represented that Defendant would follow the schedule for settlement payments anticipated in FLSA Settlement Agreement § 2.3(A) but in the year 2026, such that payments under the FLSA Settlement Agreement and the Race Claims Settlement Agreement would be complete by September 2026. (*See* Minute Entry dated May 28, 2026; FLSA Settlement Agreement § 2.3(A).) Defendant will thus cause $200,000 to be deposited into an escrow account maintained by the Claims Administrator by each of the following

three dates: June 15, 2026; July 15, 2026; and August 15, 2026. Finally, on September 15, 2026, Defendant will cause $30,000 to be deposited into an escrow account maintained by the Claims Administrator.

On May 29, 2026, Collective Counsel submitted contemporaneous billing records, as ordered by the Court, and informed the Court that (i) Collective Counsel was withdrawing its request for reimbursement of $629.14 in meal costs and seeks instead $22,823.49 for reimbursement of costs and (ii) that Collective Counsel had been able to locate and contact Mr. McKeever, who did not wish to object to or request exclusion from the FLSA Settlement. (ECF No. 383.)

## LEGAL STANDARD

An employee may bring a collective action for unpaid wages "for and [o]n behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). After a court conditionally certifies an action as a FLSA collective action, the plaintiffs are authorized to send notice to potential similarly situated plaintiffs to opt-in. *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). A collective action brought under the FLSA may be brought only on behalf of those employees who affirmatively "opt in" by giving consent in writing to become a party to the action. *Mei Xing Yu v. Hasaki Rest.*, Inc., 944 F.3d 395, 408 (2d Cir. 2019) (citing 29 U.S.C. § 216(b)); *see also Myers*, 624 F.3d at 542

("[u]nlike in traditional 'class actions' . . . plaintiffs in FLSA representative actions must affirmatively 'opt in' to be part of the class and to be bound by any judgment") (citation modified).

"FLSA collective actions do not implicate the same due process concerns as Rule 23 actions," *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452, 2014 WL 1777438, at *8 (S.D.N.Y. May 1, 2014); and are "examined with less scrutiny than a class action settlement," *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). "[T]he court simply asks whether the proposed settlement reflects a fair and reasonable compromise of disputed issues that were reached as a result of contested litigation." *Lizondro-Garcia*, 516 F. Supp. 3d at 312–13 (citing *Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012)). Pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), "judicial approval of FLSA settlements is required." *Hall v. ProSource Techs., LLC*, No. 14-cv-2502 (SIL), 2016 WL 1555128, at *8 (E.D.N.Y. Apr. 11, 2016).

Courts in this Circuit consider the same *Wolinsky* factors in FLSA collective settlements as courts do in FLSA individual settlements actions:

(1)[T]he . . . range of possible recovery; (2) the extent

11

> to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Hall*, 2016 WL 1555128, at *8-9 (citing *Wolinsky*, 900 F.Supp.2d at 335) (citation modified).

"In addition, if attorneys' fees and costs are provided for in the settlement, district courts will also evaluate the reasonableness of the fees and costs." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (citing *Cheeks*, 796 F.3d at 206); *see also* 29 U.S.C. § 216(b) ("The court in [an FLSA] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.").

## DISCUSSION

### I.   The FLSA Collective Members are Similarly Situated

On September 18, 2020, Magistrate Judge Pollack granted Plaintiffs' motion for conditional certification of a collective action under the FLSA of

> All Field Installation Department employees who worked for Momentum out of its New York and New Jersey warehouses during the full statutory period, including, but not limited to, installers, electricians, roof leads and foremen.

(Am. Compl. ¶ 199; TAC ¶ 329; *see also* ECF No. 63 at 21-22.) 102 current and former employees filed Consent to Join forms with the

Court pursuant to the FLSA, 29 U.S.C. § 216(b), and opted into the action. (MOL at 2.) Under the FLSA Settlement Agreement, the Parties agreed that the individuals who submitted Consent to Join forms on the docket were members of the FLSA Collective. (FLSA Settlement Agreement ¶ 1.9.)

The Named Plaintiffs and Opt-In Plaintiffs were "common victims of a FLSA violation" because Momentum failed to pay them for all hours worked and failed to pay overtime by deducting automatically 30 minutes from each FLSA Collective members' daily hours. *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 368 (S.D.N.Y. 2014); (MOL at 12-13.) For the purposes of the FLSA Settlement, the Court finds that the Named Plaintiffs and the Opt-In Members in the FLSA Collective are likely "similarly situated" within the meaning of 29 U.S.C. § 216(b) because they "were common victims of a FLSA violation pursuant to a systematically-applied company policy or practice" and "common questions of law and fact that justify representational litigation" exist. *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 516 (2d Cir. 2020) (quoting *McGlone,* 49 F. Supp. 3d at 367).

## II.  Notice of FLSA Settlement

Pursuant to the Court's March 31, 2026 Order preliminarily approving the FLSA Settlement Agreement, the Claims Administrator sent Court-approved Notices via email to each of the FLSA Collective members based on email addresses from Collective

13

Counsel.  (ECF No. 381-1, "Peek Decl." ¶ 3.)  One email was returned as undeliverable, and the Claims Administrator attempted one skip-trace re-mailing of the Notice for this person.  (*Id.* ¶ 4.)  That individual has now been located and does not object to or opt out of the proposed settlement.  (ECF No. 383.)  As of the opt-out and exclusion deadline of May 11, 2026, the Claims Administrator had not received any emails or letters from FLSA Collective members who objected to or requested to be excluded from the FLSA Settlement.  (*Id.* ¶¶ 5, 6.)  The Court finds that the notice procedure adequately provided Opt-In Members the ability to review or object to the FLSA Settlement Agreement.

## III. Consents to FLSA Settlement

"While consent to a settlement may be inferred in a class action from the class member's failure to opt-out, consent from silence is insufficient for an employee who is a party to a collective action."  *Marichal v. Attending Home Care Servs., LLC*, 432 F. Supp. 3d 271, 279 (E.D.N.Y. 2020).  "Understanding that parties may wish to resolve all FLSA claims together and aware of the practical difficulties of dealing with a large number of opt-in plaintiffs, courts approve different procedural mechanisms to facilitate opt-in plaintiffs' consent to a settlement."  *Id.* at 280.  As occurred in this case, opt-in "members often authorize . . . counsel or the named plaintiff[s] to settle the case for them, and courts have approved such *explicit* authorizations."  *Id.*

(quoting *Hood v. Uber Techs., Inc.*, No. 1:16-CV-998, 2019 WL 93546, at \*3 (M.D.N.C. Jan. 3, 2019), *aff'd sub nom. Haskett v. Uber Techs., Inc.*, 780 F. App'x 25 (4th Cir. 2019)).

Here, the Opt-In Members filed Consent to Join forms which "designate[d] the [N]amed [P]laintiffs as [the employee's] agents to make decisions on [the employee's] behalf concerning . . . entering into a settlement agreement, and all other matters pertaining to this lawsuit." (*See e.g.*, ECF No. 72.) Because no Opt-In Members have objected to or requested exclusion after receiving notice of the FLSA Settlement Agreement, and the Opt-In Members filed Consent to Join forms authorizing Collective Counsel or the Named Plaintiffs to settle the case for them, (*see e.g.*, ECF No. 205), the Court finds that the Opt-in Members have consented to the FLSA Settlement Agreement. *See Hood*, 2019 WL 93546, at \*3 (aggregating district court cases where courts have approved as consent to settlement opt-in members' explicit authorization for counsel or the named plaintiffs to settle on the opt-in plaintiffs' behalf); *Halle v. W. Penn Allegheny Health Sys., Inc.*, 842 F.3d 215, 230 (3d Cir. 2016) (finding opt-in FLSA collective members waived their right to individually appeal when they signed consent forms stating they "authorize and designate the named plaintiffs to act on my behalf concerning the litigation . . . consideration of settlement and . . . all other matters pertaining to this lawsuit").

15

## IV. The FLSA Settlement Agreement is Fair and Reasonable Under the *Wolinsky* Factors

The Court evaluates the FLSA Settlement Agreement against the *Wolinsky* factors and, for the reasons set forth below, finds the FLSA Settlement Agreement to be a "fair and reasonable compromise of Plaintiff[s'] claims." *Naraine v. Washdry Tech Inc.*, 749 F. Supp. 3d 398, 410 (E.D.N.Y. 2024).

### A. Range of Recovery

The FLSA Settlement Agreement provides a total payment of $630,000, of which Collective Counsel seeks $209,790 in fees and $22,823.49 in costs, the Named Plaintiffs will receive a total of $44,000 in service awards, and the Claims Administrator will receive $22,000 in administration fees. (MOL 3-5, 9.) "Courts evaluate the fairness of a plaintiff's recovery *after* deducting attorneys' fees and costs." *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-cv-782(KMK), 2021 WL 1964724, at *3 n.5 (S.D.N.Y. May 17, 2021) (citing *Arango v. Scotts Co., LLC*, No. 17-cv-7174(KMK), 2020 WL 5898956, at *3 (S.D.N.Y. Oct. 5, 2020) (emphasis in original). Thus, the Court's evaluation of the fairness of the proposed recovery by Plaintiffs will be based on $331,386.51.

Wigdor estimates that if each FLSA Collective member prevailed on their wage and hour violation claims for failure to pay straight time due to automatically deducted lunch breaks, the FLSA Collective could be awarded a maximum of $849,262.50 total

16

($424,631.25 in total straight time damages and $424,631.25 in liquidated damages).[4] (MOL at 9; Pearson Decl. ¶ 56, Ex. 10.)

A Net Settlement Amount of $331,386.51 is around 39% of the most optimistic recovery of $849,262.50 if a jury were to award liquidated damages and such an award survived appeal. (MOL at 9–10.) This is in line with other FLSA settlements approved by courts in this Circuit. *See, e.g., Caccavale v. Hewlett-Packard Co.*, No. 20-CV-974-NJC-ST, 2025 WL 882220, at *21 (E.D.N.Y. Mar. 14, 2025), *report and recommendation adopted*, No. 2:20-CV-974 (NJC)(ST), 2025 WL 882221 (E.D.N.Y. Mar. 21, 2025) (finding 26% recovery of best-case recovery reasonable) (citation modified).

B.    Remaining *Wolinsky* Factors

The Court finds that the remaining *Wolinsky* factors weigh in favor of approving the FLSA Settlement Agreement. The Court is satisfied that the FLSA Settlement Agreement was negotiated in good faith, and at arm's length, and that there is no evidence of fraud or collusion. (*See* MOL at 7–8, 11 (explaining that the settlement was negotiated after thorough investigation and evaluation of the claims "at arm's length between capable and experienced counsel," in front of a third-party "mediator with

---

[4] Liquidated damages are considered in determining whether the range of recovery. *See, e.g., Charicando v. Tribesmen Gen. Contracting, Inc.*, No 22-cv-5920(DLI)(TAM), 2025 WL 665293, at *11 (E.D.N.Y. Feb. 12, 2025), *report and recommendation adopted*, No. 22-cv-5920(DLI)(TAM), Feb. 28, 2025 Text Order.

17

decades of experience".) The FLSA Settlement Agreement also allows the parties to avoid further litigation risks, burdens, and expenses in establishing defenses and claims including a time and resource-consuming trial. (*See* MOL at 10-11).

Having considered the above "including (i) that the releases are not overly broad and (ii) there is no confidentiality attached to the settlement" or "a non-disparagement clause," the Court finds that the *Wolinsky* factors weigh in favor of approval of the proposed settlement agreements. *D'Angelo v. Hunter Bus. Sch., Inc.*, No. 21-CV-03334 (JMW), 2023 WL 4838156, at *9 (E.D.N.Y. July 28, 2023).

## V.    The Service Awards are Fair and Reasonable

Plaintiffs request Service Awards totaling $44,000: $4,000 to Named Plaintiff Murrell; $3,000 to the other New York Plaintiffs and Mr. Ashby; and $2,000 each to the remaining eleven Named Plaintiffs. (Pearson Decl., Ex. 4.) Courts regularly grant requests for service awards "to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Hall*, 2016 WL 1555128, at *1,9.

Each Named Plaintiff was deposed, regularly met and communicated with Collective Counsel during all phases of the litigation process, and undertook the risk of retaliation and

potential litigation costs and expenses in the event of an unfavorable litigation outcome. (MOL at 14-15.)

The Court is satisfied that the requested Service Awards totaling $44,000 are fair and reasonable given the effort and time the Named Plaintiffs' have put into this complex litigation spanning over seven years, and the overall settlement amount of $630,000. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187-88 (W.D.N.Y. 2005) (approving enhancement award to class representative totaling 8.4% of the total settlement fund); *Reyes v. Altamarea Grp., LLC*, No. 10-cv-6451 (RLE), 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (service awards of $15,000 to three plaintiffs each and $5,000 to one plaintiff, totaling $50,000 of the $300,000 fund).

## VI. Attorneys' Fees of 33.33% of Settlement Fund is Reasonable

Collective Counsel seeks 33.3%, or $209,790 of the gross Settlement Amount. (MOL at 3, 16-17; Pearson Decl. ¶ 70.)[5] Under the FLSA Settlement Agreement, Defendant does not oppose attorneys' fees of up to 33.33% of the Settlement Amount, as well as reimbursement of litigation costs and expenses. (FLSA

---

[5] The Pearson Declaration mistakenly states twice that Collective Counsel seeks $290,790 of the Settlement Amount in fees (*see* Pearson Decl. at ¶¶ 68, 79). However, Collective Counsel confirmed at the Final Fairness Hearing that this was a typographical error, and that Collective Counsel is seeking $209,790 in attorneys' fees. (Minute Entry dated May 28, 2026.)

Settlement Agreement § 3.2.)  For the reasons set forth herein, the Court grants Collective Counsel's request for $209,790 in attorneys' fees and $22,823.49 in costs.

### A.    Percentage of Recovery and Lodestar Methods

"It is well established that 'courts may calculate reasonable attorneys' fees from a common fund based either on the percentage of the recovery method or the lodestar method.'"  *Hall*, 2016 WL 1555128, at *10 (citation modified.)    Ultimately, "[w]hat constitutes a reasonable fee is properly committed to the sound discretion of the district court." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).

Collective Counsel's requested fees are reasonable because courts generally find awards of around one-third of settlement value to be fair and reasonable.  *See, e.g., Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at *10 (awarding 30% of Settlement Fund to firm that served as Class and Collective Counsel); (*see also* MOL at 23 (aggregating cases awarding one quarter or one third of settlement amounts in attorneys' fees).)

The Court also finds the requested fee is reasonable under the lodestar cross-check method.[6]  (*See* MOL at 23-25.)  Under the

_____

[6] On May 29, 2026, Collective Counsel submitted detailed billing records and time entries as ordered by the Court.  (Minute Entry dated May 28, 2026.)   The entries showed Collective Counsel's billing records including time spent investigating claims; drafting complaints; communicating with Plaintiffs; engaging in

lodestar method, the Court evaluates the number of hours reasonably billed multiplied by a reasonable hourly rate. *Goldberger*, 209 F.3d at 47. Collective Counsel reasonably billed, in aggregate, 880.50 hours at rates ranging from $180 for a paralegal to $1,250 for a partner with a total lodestar amount of $536,582. (Pearson Decl. Ex. 7.) Pursuant to the lodestar cross-check, the lodestar amount of $536,582 measured against Class Counsel's requested fee of $209,760 results in a lodestar multiplier of around .39, which is "well within what has been deemed reasonable . . . in this circuit." *In re Parking Heaters, Antitrust Litig.*, No. 15-MC-0940 (DLI) (JO), 2019 WL 8137325, at *8 (E.D.N.Y Aug. 15, 2019) (citation modified)(collecting cases); *see also Hall*, 2016 WL 1555128, at *10 (awarding fee award representing a 2.01 multiplier of the stated lodestar); (MOL at 23–25).

### B.    Goldberger Factors

The Second Circuit has also identified several factors in assessing a reasonable fee award:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation[]; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

---

discovery, mediation and settlement discussions; and drafting motions for collective action settlement approval. (*See generally* ECF No. 383-1.) The time entries show minimal duplication and are reasonably detailed.

*Goldberger*, 209 F.3d at 50 (citation modified). The Court finds that the *Goldberger* factors weigh in favor of the requested fee award. (*See* MOL at 19-21.)

First, Collective Counsel expended 880.50 total hours and has obtained a successful outcome for the FLSA Collective members. (Pearson Decl., ¶¶ 13-45, Ex. 7.) These hours included a diligent investigation into Plaintiffs' claims, the identification of FLSA Collective members, discovery, engaging experts, and substantial settlement negotiations, including six total settlement conferences and mediations. (*See* MOL at 19-20; *see generally* ECF No. 383-1.) Second, the risks of litigation are significant because Collective Counsel took this case on contingency with the possibility of no recovery, a collective action certification challenge, or a loss at trial or appeal of any resulting decision. (MOL at 21-22.) Third, this Action is a complex and expensive litigation involving over 100 individuals and both Wage and Hour Claims and Race Claims. (*Id.* at 21.) Fourth, Collective Counsel obtained positive results in the Settlement, both in terms of the amount of recovery and the Collective Members' response to the settlement. As noted above, there have been no objections or opt-out requests to this settlement. (Peek Decl. ¶¶ 5, 6.) Fifth, "public policy" favors the requested fees because Collective Counsel "served the important function of protecting the wage and hour rights of hundreds of employees who might not otherwise have

22

the means or incentive to pursue individual actions." *Hall*, 2016 WL 1555128, at *16 (citation modified).

Accordingly, the Court concludes that the requested fee award is reasonable under the percentage of the recovery method, the lodestar method, and the Goldberger factors.

**C.    Reimbursement of $22,823.49 of Costs to Collective Counsel is Reasonable and Appropriate**

Collective Counsel requests reimbursement of costs in the amount of $22,823.49, which represents 50% of Collective Counsel's costs incurred between 2019 and May 12, 2025. (*See* MOL at 26; ECF No. 383 at 1.)  The remaining amount was allocated to settlement in the Race Claims. (*Id.*)

Defendant does not oppose, and no FLSA Collective member has objected to Collective Counsel's expense request.  Collective Counsel is entitled to reimbursement from the common fund for reasonable litigation expenses that would have been reimbursed by an hourly-billed client.  *See Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987).  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients." *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) (citation modified). The Court finds that Collective Counsel reasonably spent and may be reimbursed for $22,823.49 in mediation, court, service, and filing fees; and printing and deposition costs. (*See*

MOL at 34; Pearson Decl., Ex. 5; ECF No 383 at 1.) Accordingly, the Court grants Collective Counsel's request for $22,823.49 in costs.

## VII. Payment of $22,000 to the Claims Administrator is Reasonable

Finally, Plaintiffs request a $22,000 award for administration fees to Arden Claims Service LLC. (MOL at 5.) The Claims Administrator disseminated the email notices to the FLSA Collective members regarding final approval of the FLSA Settlement and will responsible for managing payment to the FLSA Collective members and tracking and maintaining of all communications to FLSA Collective members upon final approval of the FLSA Settlement Agreement. (FLSA Settlement Agreement § 2.3.) The Court thus finds reasonable a payment of $22,000 to the Claims Administrator. *See Mills v. Cap. One, N.A.*, No. 14-cv-1937 (HBP), 2015 WL 5730008, at *18 (S.D.N.Y. Sept. 30, 2015) (awarding administrator fees to claims administrator where no collective member objected to fee, and the $23,000 fee sought was reasonable).

### CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Final Settlement Approval is **GRANTED**.

The Court approves the FLSA Settlement Agreement and its terms to be fair, adequate, reasonable and binding on all FLSA Collective Members and Defendant. The Court grants service awards of $4,000

24

to Named Plaintiff Murrell, $3,000 to the other New York Plaintiffs and Joseph Ashby, and $2,000 each to the remaining eleven Named Plaintiffs.  The Court also grants Collective Counsel's request for $209,790 in attorneys' fees and $22,823.49 in reimbursement for litigation costs.  Finally, the Court grants a $22,000 payment to the Claims Administrator.

The Defendant is ordered to deposit the following amounts into an escrow account by the following dates:

- $200,000 by June 15, 2026;
- $200,000 by July 15, 2026;
- $200,000 by August 15, 2026; and
- $30,000 by September 15, 2026.

The FLSA Settlement Agreement resolves all wage and hour claims asserted in this action.  The Court retains jurisdiction over the interpretation and implementation of the FLSA Settlement Agreement, and any matters arising out of or related to the foregoing.

By June 8, 2026, the Parties shall inform the Court as to when a stipulation of dismissal will be filed regarding the Race Claims such that the Court may enter final judgment in this case.

**So ordered.**

Dated:   June 9, 2026
         Brooklyn, New York

Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

25